Robert HOFFMAN *v.* STATE of Arkansas

86-14                                                711 S.W.2d 151

Supreme Court of Arkansas
Opinion delivered June 9, 1986

*Evans & Evans*, by: *James E. Evans, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. On February 24, 1984, the appellant offered a plea of guilty to theft by deception which was taken under advisement by the trial court for a period of seven years conditioned upon the following: good behavior, payment of

court costs and restitution in the amount of $57,040.03 payable in $1,000.00 monthly installments. On April 1, 1985, the state filed a motion for revocation of the advisory sentence because of the appellant's failure to make all of the scheduled restitution payments. On July 9, 1985, the court conducted a hearing at which time it found the appellant had violated the terms and conditions of the court judgment of February 24th. The court ordered that five and one-half years of the seven year sentence to the Arkansas Department of Correction, theretofore deferred, be pronounced upon the appellant. It is from that decision that this appeal is brought. Our jurisdiction is pursuant to Sup. Ct. R. 29 (1)(c), as we are being asked to interpret an act of the General Assembly.

The appellant claims that the trial court's finding that he failed to pay restitution as ordered by the court, and that said failure was willful and without good cause, is clearly against the preponderance of the evidence, and that the revocation violated his right to equal protection.

The evidence demonstrates that when appellant entered his plea of guilty on February 24, he and his attorney set up a payment schedule for restitution of $1,000.00 per month, that figure coming from his calculations and that of his attorney. It was acknowledged by appellant that he wanted to pay at that rate. At the time of his plea, the appellant executed and tendered a plea questionnaire to the trial court in which he acknowledged that, upon his plea of guilty, the prosecuting attorney would recommend that the court take such plea "under advisement for seven years, paid at $1,000.00 a month then dismissed when paid off." Thereupon, the trial court entered its judgment stating that the appellant "offered a plea of guilty, which plea was taken under advisement by the Court". The court further:

> ORDERED AND ADJUDGED that the plea of guilty of Theft by Deception be and is hereby taken under advisement by the Court for a period of (7) year(s), and upon recommendation of the Prosecuting Attorney and conditioned upon the following:
> (1)  That the defendant pay restitution in the amount of $57,040.03, with $1000.00 due 2-24-84, and the

balance payable at $1000.00 per month, beginning 4-1-84.

. . . .

On April 1, 1985, the state filed its motion for revocation of the advisory sentence, stating that the defendant has willfully and knowingly failed to pay all the restitution ordered, thereby violating the terms of his advisory sentence. A hearing was held on said motion on July 9, 1985 at which time the state offered evidence that the payments made by the appellant were irregular and have resulted in a total paid of $6,711.92, which is $7,288.08 less than the amount due under the payment schedule.

Appellant offered evidence that his ability to make restitution payments was limited inasmuch as his income for 1984 from his job with National Home Improvement, Inc., as evidenced by a W-2 form, was $8,211.75, and of that amount, $5,811.92 was paid in restitution. The owner of National Home Improvement, Inc., testified that appellant was a good employee and worked for him in 1984 until April of 1985. According to the owner, appellant earned approximately $1,500.00 between January and April of 1985, and $900.00 of that was sent to the court in January for payment of restitution. He further explained that in 1985 the appellant had several sales fall through because the title loans used by the company were discontinued. After April, 1985, when appellant left National Home Improvement, Inc., the owner testified that appellant tried to find a job with two car dealerships but failed. National Home Improvement, Inc., has offered to let appellant come back to work. The owner testified appellant could earn $12,000.00 to $15,000.00 during 1985.

The appellant testified that he is married and lives in Rogers, Arkansas. He owns a 1984 Toronado and a 1981 pickup truck. Previously he had another truck and two Cadillacs and sold them to apply to the loan on the car and truck. The two Cadillacs were apparently owned prior to incurring the restitution debt. The Toronado was bought in June, 1984, during the period of restitution, for $17,000. Appellant testified his wife is now unemployed and has been for two months and that he lived on her income before she lost her job. Since April, he stated he has looked for jobs in the auto sales field at car dealerships in Arkansas and Missouri. Appellant, his wife, and stepson lived in a large, rented house with a pool for $475 per month. Appellant

said his stepson paid $275 of the rent and, when he moved out, appellant and his wife moved to Rogers where they now rent a duplex for $300 a month.

Appellant asked that his sentence not be revoked and that he be allowed to pay $300 per month instead of $1,000.

In *Culpepper v. State*, 268 Ark. 263, 595 S.W.2d 220 (1980), this court specifically noted that all sentences are controlled by the provisions of Ark. Stat. Ann. § 41-803 (Repl. 1977), which provides in part that "[i]f a defendant pleads . . . guilty of an offense other than capital murder, the court may suspend imposition of sentence or place the defendant on probation, in accordance with . . . [Ark. Stat. Ann.] §§ 41-1201—41-1211." Any provisions of the prior law that are inconsistent are repealed by implication. In this instance, the trial court ignored the specifics of *Culpepper* by substituting a form of court probation under the label of an "advisory sentence." Court probation, apart from that authorized by statute, is no longer available as a sentencing alternative inasmuch as it was codified under the Arkansas Criminal Code (Act 280 of 1975) in Ark. Stat. Ann. §§ 41-801—41-1351 (Repl. 1977 & Supp. 1981). *English v. State*, 274 Ark. 304, 626 S.W.2d 191 (1982). The same is true of "advisory sentences", and all other unauthorized forms of sentencing where the trial court takes the defendant's plea under advisement subject to conditions, which are in essence, terms of probation or suspended sentences. The trial court was in error in its sentencing. However, the sentence was not objected to below or made a subject matter of this appeal. Since we do not have the plain error rule, we will not base our decision on the improper sentence. It is the proper subject matter for a petition for Rule 37.

Accordingly, we will view the court's findings as though the court intended to sentence the appellant to seven years, which were suspended conditioned upon payment of restitution. This is a logical assumption in light of the fact the court, in its order of July 9th ordered and adjudged "that five and one half (5 ½) years of the seven (7) year sentence to the Arkansas Department of Correction heretofore deferred be pronounced upon the defendant."

Arkansas Stat. Ann. § 41-1209 (Repl. 1977) provides in pertinent part:

(4) If a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his suspension or probation, it may revoke the suspension or probation at any time prior to the expiration of the period of suspension or probation.

█ █ In a hearing to revoke the burden is upon the state to prove the violation of a condition by a preponderance of the evidence, and on appellate review the trial court's findings are upheld unless they are clearly against a preponderance of the evidence. *Cavin v. State*, 11 Ark. App. 294, 669 S.W.2d 508 (1984); *Pearson v. State*, 262 Ark. 513, 558 S.W.2d 149 (1977). A determination of preponderance of the evidence turns heavily on questions of credibility and weight to be given the testimony. In those areas we defer to the trial judge's superior position. *Cavin, supra.*

█ The trial court's decision is not clearly against a preponderance of the evidence. Appellant's failure to make the ordered payments, in light of his standard of living, his purchase of a $17,000 car, and the fact that he did not search for a job outside the field of auto sales, can be construed as an inexcusable failure to comply with the conditions of his suspension.

█ Appellant's equal protection argument is based on holdings by the U.S. Supreme Court that the state cannot "impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate v. Short*, 401 U.S. 395, 398 (1971); *see also Williams v. Illinois*, 399 U.S. 235 (1970). The Supreme Court has also held, however, that:

> [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment. . . .

*Bearden v. Georgia*, 461 U.S. 660, 672 (1983). Here, the appellant, with the assistance of counsel, tendered his own schedule of payment for restitution in exchange for a suspended sentence and then made sporadic payments. The trial court

found, in essence, that appellant "failed to make sufficient bona fide efforts legally to acquire the resources to pay." Accordingly, there was no equal protection violation.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The majority opinion clearly and correctly states that the original plea by appellant was *taken under advisement* on February 24, 1984. The exact words of the trial court were, "[T]he plea of guilty of theft by deception be and is hereby taken under advisement by the Court for the period of (7) year(s), and upon recommendation of the prosecuting attorney, and conditioned upon the following . . . . "One of the conditions was that the appellant pay restitution at the rate of $1,000 per month."

The appellant did not pay the scheduled payments in full and the state filed a motion to revoke the *advisory sentence*. On July 9, 1985, a hearing was held and the court announced that "five and one half (5 ½) years of the seven (7) year sentence to the Arkansas Department of Correction heretofore deferred be pronounced upon the defendant."

Both this Court and the trial court have changed horses in the middle of the stream. The appellant was not sentenced to any term in the Department of Corrections. Sentence was unequivocally and unmistakably deferred—not pronounced. How can a court revoke a sentence which has not been imposed? The majority attempts to wade the illegal sentence issue on the grounds that it was not objected to below. There was no sentence to object to until the present sentence was pronounced. The appellant fought the revocation as hard as he could in the trial court then lodged this appeal. How could he object more?

The factual issues are not stated as fully as I would like. Therefore, I will enumerate additional facts which I think should be considered. From the date of the plea, February 24, 1984, until the end of the year, the appellant earned (according to his Form 1099) $8,211.75 and paid $5,811.92 into the trial court as restitution. The balance of his wages, $2,399.83 as paid to other creditors. Appellant did not receive any of these funds. During 1985, up to the time of the hearing, the appellant earned

$1,500.00 and $900.00 of it went directly to the restitution fund and the balance, except for $100, was garnished by another creditor. Between the time of the agreement to pay $1,000 per month and the date of the unauthorized revocation, the appellant earned $9,711.75 and all of it except $100 went to creditors, including the restitution fund.

It is true appellant was unemployed during part of 1985. However, his former employer supported appellant's statement that the unemployment was due to lack of business and not by fault of the appellant. Appellant testified that he had been trying to find work in the automobile sales field but had been unsuccessful. He was reemployed by his previous employer at the time of the hearing and it was this employment which paid him $1,500 to 1985.

During part of the appellant's unemployment he lived in a house, which had a swimming pool. His wife paid part of the $475 monthly rent and a relative, who also lived in the house, paid the balance of the rent. Appellant had two Cadillacs when he pled guilty but has since disposed of them for the balance owed on them. His wife purchased another automobile in 1984, but it was on credit and she used it in her business. The majority opinion erroneously indicates that the vehicle was transferred to the appellant.

On page four of the slip opinion the court correctly sets forth the controlling Arkansas Statute relevant to revocation of suspension, which did not occur in this case. The Statutory requirement is that there be an *inexcusable failure* by the defendant to pay what he has agreed to pay. Otherwise such revocation would amount to imprisonment for debt. *Bearden* v. *Georgia*, 461 U.S. 660 (1983). Also, see *Tate* v. *Short*, 401 U.S. 395 (1971). The appellant herein may have entered into the agreement voluntarily but the prosecuting attorney and the court were parties to the agreement.

The remarks and finding of the court clearly reveal this revocation was not based upon the facts and the law. The trial court stated in part as follows:

> All right, gentlemen, let me start by saying this Court is not in the collection business, the civil debt collection business.

It never has been; I do not intend to ever put it in that position at this time.

. . . .

Now, as you gentlemen know, it has been the position of this court that nonpayment of restitution is looked at very seriously and very critically by this court . . . .

. .. . .

[I] guess what I am trying to say is, it is apparent to me, at this juncture of the case, Mr. Hoffman overstated his position or ability when he entered his plea. He had a job and he has not incurred more debts, he says.

I think it is simply a case of perhaps attempting to bore with too big of an auger, continuing to live in a lifestyle he has enjoyed, and perhaps it was just too high for his present situation, and he continued in this manner until the wheels just fell off. It is just as simple as that.

. . . .

[T]here was no way under the sun that he was going to be able to make $1,000 restitution payments back when he entered the plea in '84, and I think he knew it or should have known it.

. . . .

The court went on to say that appellant was unemployed and had been unable to find a job in the car sales business but that there must be other jobs out there he could get. The court further allowed that it was a hopeless statement from the beginning and restitution was like spitting in the wind.

It is my opinion the court should have allowed the appellant an opportunity to make payments within his range of ability. If the court knew from the beginning that the payment schedule could not be kept another one should have been approved. In my opinion there has been absolutely no showing that appellant willfully refused to pay his obligation under the agreement. Now, nobody will receive anything and the state will be out much time and expense in keeping the appellant. There are no winners in this case—everyone, including the taxpayers, loses.

I would reverse and remand to the trial court for consideration of alternatives to the imprisonment of the appellant.