Tracy SUIRE *v.* STATE of Arkansas

CA CR 86-26                                    712 S.W.2d 317

Court of Appeals of Arkansas
En Banc
Opinion delivered July 2, 1986

*Mathis & Childers*, by: *Joe Childers*, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Judge. This appeal comes from the Clark County Circuit Court. Appellant, Tracy Suire, appeals the decision of the court revoking appellant's probation and sentencing him to six years in the Arkansas Department of Corrections. We reverse and remand.

Appellant argues that the trial court erred in relieving appellant's attorney from representing appellant on the day of appellant's revocation hearing and forcing appellant to represent himself. The pertinent facts of the case are as follows: A petition to revoke appellant's suspended sentence was filed on May 2, 1985, charging appellant with violating the terms and conditions of the probation agreement. Appellant was notified that a hearing on the motion would be held and that he and his attorney should be present. On June 6, 1985, appellant appeared without counsel at a pretrial hearing. A date for appellant's revocation hearing was set and appellant told the trial judge that he was planning on hiring an attorney the following day. The hearing was continued until July 8, 1985, in order for appellant to have time to obtain counsel.

On July 8, 1985, appellant was not present at the hearing due to an injury and the hearing was continued until July 10, 1985. On July 10, appellant appeared, again without counsel, and informed the court that he could not afford to hire an attorney. The trial judge asked appellant to fill out an application form requesting the court to appoint counsel. Appellant did so. The trial judge determined that the court could not appoint counsel for appellant due to the professional bond and appellant's continued employment. The court once again continued the hearing until July 22, 1985, to afford appellant an opportunity to obtain counsel. The trial judge again informed appellant of his right to counsel. Appellant indicated that he would hire an attorney.

On July 22, 1985, appellant appeared before the court, once again without counsel. The trial judge continued the hearing until September 5, 1985, and informed appellant, "Now, if you wait to hire the attorney, then you're going to be back in the same boat and you're going to represent yourself. I'm not going to put it off again for you."

On September 5, 1985, the pretrial proceeding was held and appellant was present without counsel. The court continued the revocation hearing until November 16, 1985, because appellant's attorney was not present.

On November 16, 1985, appellant appeared with counsel at the revocation hearing. Appellant's counsel had made a motion to be excused or relieved from representing appellant due to appellant's failure to pay in accordance with their agreement. The following is an excerpt from the proceedings:

BY THE COURT:

All right, let's see, Mr. Suire. On July 22nd you asked that I continue this matter for you to hire an attorney. It was continued until the pretrial 9-5 when it was set nonjury and was set specifically for this day sometime after September 5th . . . . Since that time I have received a request that Mr. McMillan be excused from representing you since you had not paid him — pardon me. I don't know that it said "paid," but there had not been a satisfaction of the agreement between you.

Now were you aware of that petition?

BY MR. SUIRE:

No, sir.

. . . .

BY MR. MCMILLAN:

If the Court will note that my certificate of service indicates that it was sent to Mr. Tracy Suire, Route 3, Box 377, Hot Springs.

BY MR. SUIRE:

I never received anything. The only letter I ever received from you was —

. . . .

BY MR. MCMILLAN:

Here is the letter, Your Honor, that I sent him and it was never picked up, what the indication was,

"unclaimed."

BY MR. SUIRE:

I never got nothing [sic] telling me to pick it up.

BY MR. MCMILLAN:

Do you still reside at Route 3, Box 377?

BY MR. SUIRE:

Yes, I do.

. . . .

BY MR. MCMILLAN:

It's my understanding, Your Honor, Mr. Suire is still employed and has been throughout the course of our representation of him. And, therefore — of course the terms of our representation were that he was going to pay $400 down and then $50 per week. To date, my motion states he's paid $320 and that was in the first week or so of our representation and we have received no payments. On top of that he hasn't even contacted me and I had to contact him in order to notify him of this trial. We had received no communication from him and I had sent him a couple of letters on top of the motion.

. . . .

BY THE COURT:

Is it true you have not paid him according to your agreement?

BY MR. SUIRE:

I've not paid him in full, no, sir.

BY THE COURT:

I didn't say in full, I said according to your agreement.

BY MR. SUIRE:

No, sir, I haven't.

BY THE COURT:

Well, Mr. Suire, you can represent yourself. I can't require you to pay your attorney or to have an attorney. But, we continued it for you to obtain an attorney and you did obtain one, but then that's between you all as to what happened.

. . . .

BY THE COURT:

. . . Now, Mr. Suire, before I excuse him, we're still going to go ahead with the hearing today and you can represent yourself, that's fine. But, I'm not going to continue it for you to obtain another attorney since I've continued it before and apparently it's your refusal or failure to pay that's caused him to be in a position of asking to be released. Do you understand that?

BY MR. SUIRE:

Yes, sir.

BY THE COURT:

All right, do you have any objection in me releasing him from representing you?

BY MR. SUIRE:

There's nothing I can say.

BY THE COURT:

Sir?

BY MR. SUIRE:

I said there's nothing I can say. I could give him more money now if he'll could [sic] take cash, but I mean, that's up to him.

. . . .

BY THE COURT:

Okay. All right, you're excused from representing him.

The question before us is whether the trial judge should have

permitted appellant's counsel to be relieved without continuing the hearing to allow appellant an opportunity to obtain counsel. Appellee, the State, argues that appellant waived his right to counsel. However, we find that problems develop when we try to characterize appellant's actions as waiver of counsel under the applicable case law.

In *Philyaw* v. *State,* 288 Ark. 237, 704 S.W.2d 608 (1986), the Arkansas Supreme Court set out the following rules:

> The right to counsel, though, is a personal right and the accused may knowingly and intelligently waive counsel either at a pretrial stage or at the trial, [citations omitted] however, every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. [citation omitted]
>
> . . . .
>
> . . . When an accused appears with retained counsel, the trial judge should not allow the attorney of record to withdraw until:
>
> (1) new counsel has been retained; or
>
> (2) a showing of indigency has been made and counsel has been appointed; or
>
> (3) a voluntary and intelligent waiver of the right to counsel is established on the record.
>
> To establish the latter, the trial judge must explain to the accused that he is entitled as a matter of law to an attorney and question him to see if he can afford to hire counsel. The judge must also explain the desirability of having the assistance of an attorney during the trial and the problems attendant to one representing himself. This last requirement is especially important since a party appearing *pro se* is responsible for any mistakes he makes in the conduct of his trial and receives no special consideration on appeal.

*Id.* at 244-248, 704 S.W.2d at 611-613.

■ The Arkansas Supreme Court, in *Furr v. State,* 285 Ark. 45, 685 S.W.2d 149 (1985), held that the right to counsel may be waived, but the waiver must be made "knowingly, voluntarily, and intelligently." *Id.* at 47, 685, S.W.2d at 151. This was not a knowing, voluntary and intelligently-made waiver of counsel. We find that the trial judge left appellant no choice but to represent himself when he excused appellant's counsel. Appellant went to the hearing that day under the assumption that he had an attorney, whether he had paid him in full or not. To excuse counsel without giving appellant a chance to find another attorney was, in effect, forcing appellant to represent himself. While we sympathize with the trial judge in frustrating situations such as this, where the defendant has had numerous opportunities to obtain counsel and has failed to do so, we have no alternative but to follow the law as set out by the Arkansas Supreme Court in *Philyaw.*

We find that the trial court's action in relieving appellant's counsel at the revocation hearing without affording appellant an opportunity to retain new counsel constituted reversible error under *Philyaw.*

Reversed and remanded.

COOPER, J., concurs.

JAMES R. COOPER, Judge, concurring. I fully agree with the majority's analysis of this case, and with the result. I write only to point out that the sentence imposed by the trial court after the revocation hearing is, at best, questionable. First, the sentence originally imposed, that of a five year sentence which was taken under advisement, was an unauthorized disposition under Arkansas law. *Hoffman v. State,* 289 Ark. 184, 711 S.W.2d 151 (1986). Second, I note that in *Hoffman,* although the sentence was found to be improper, the Supreme Court affirmed on two bases: one, that there had been no objection to the sentence at the time it was imposed (though the Court did note that the appellant could seek relief under Rule 37); and two, that the trial court had actually imposed a sentence on revocation that was the equivalent of the balance remaining on a suspended sentence. In the case at bar, however, the trial court sentenced the appellant to incarceration for a period of time exceeding that which would have remained had the original sentence been a suspended one. I suggest that, in

light of *Hoffman,* if the trial court does revoke the appellant's sentence, he can be sentenced only to the balance remaining at the time of revocation, as if his original sentence had been to a term of years in the Department of Correction, with that sentence being suspended.