Timothy Bryan JORDAN *v.* STATE of Arkansas

CR 96-871 939 S.W.2d 255

Supreme Court of Arkansas
Opinion delivered January 27, 1997

*Maxie G. Kizer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. The primary issue in this case is whether the trial court's order revoking probation and sentencing appellant to serve thirty-five years in prison meets the test of fundamental fairness required under the Due Process Clause when there have been no findings of fact upon which to base a judicial determination that the failure to pay court-ordered restitution was a willful refusal to comply with the court order, and not the result of appellant's inability to pay. We have concluded that the due process requirement of fundamental fairness has not been met, and the case is reversed and remanded.

The appellant, Timothy Bryan Jordan, was charged with crimes of residential burglary, theft of property, and two counts of theft by receiving. Based upon a plea bargain with the State, Jordan entered a guilty plea to the four counts on March 21, 1995. The trial court deferred further proceedings and placed Jordan on probation for five years conditioned in part on the payment of $7,312.50 in restitution to Mr. Alfred Helvey. In agreeing to the plea bargain, the State recognized that its interest in punishment and deterrence did not require imprisonment, but would be satisfied by probation and restitution. The probation order states, "If the defendant successfully completes his period of probation this record will be expunged on application therefor."

Jordan did not report to his probation officer and failed to make any payments, and the State petitioned to revoke probation. A hearing on the State's motion to revoke was held on August 9. At this hearing, Jordan asserted that he could catch up with the required restitution by paying $500 a month, based upon earnings of $200 to $300 per week from a lawn service company. He testified that his living expenses were only $30 to $35 a week. The hearing was adjourned and reconvened on August 25.

By the August 25 hearing, Jordan was no longer working for the lawn service company, but his father testified that he would help him find a job. The trial court advised Jordan that, notwithstanding the urging by the State and the probation officer that the probation be revoked, "This court is far more interested in seeing that Mr. Helvey gets his money back than he is in sentencing you in the Department of Correction." The trial court then informed Jordan's father that the young man would need a lot of support from his father, his grandmother, and other friends to meet the restitution schedule of $500.00 per month for seven consecutive months, commencing in September, followed by payments of $100 per month until the restitution amount was paid.

The court next convened on December 11 to review progress made toward restitution. Only one payment of $500 had been made, with the help of Jordan's grandmother. Jordan claimed that he had hurt his leg, had lost his job, and had been out of work for three months. He said that he had just gotten some equipment to begin painting cars. The court said, "I don't think you're going to make it, Mr. Jordan . . . I think you've got more than you can say grace over . . . You need to go on down." Jordan's probation officer testified that he had been reporting as required by the order, that he had not tested positive for drugs, that he had no outstanding charges against him, and that his only violation was nonpayment of restitution, which was then in arrears by $1,000.

Jordan was returned to jail and on January 9, 1996, the final hearing was held. The trial court opened the hearing by advising him, "Mr. Jordan, apparently, you're not going to receive any kind of assistance from your family or friends. The Court was in hope

that somebody would come forward to give you some assistance, but apparently that's not going to be." Mr. Helvey, the victim, was then called as a witness and urged the court to impose the maximum sentence. Jordan then pleaded with the court for another chance, stating that he might be able to get a loan of $1500 to $2000 to apply to restitution, and the court replied that if he gets the loan, "we might reconsider what we're going to do right now, Mr. Jordan." The trial judge then revoked probation and sentenced Jordan to three ten-year terms and one five-year term in the Arkansas Department of Correction, with the terms to run consecutively.

In *Bearden v. Georgia*, 461 U.S. 660 (1983), the Supreme Court dealt with the issue whether the Fourteenth Amendment prohibits a State from revoking an indigent defendant's probation for failure to pay a fine and restitution. In opening its discussion of this issue, the Court states:

> Its resolution involves a delicate balance between the acceptability, and indeed wisdom, of considering all relevant factors when determining an appropriate sentence for an individual and the impermissibility of imprisoning a defendant solely because of his lack of financial resources. We conclude that the trial court erred in automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist.

*Id.* at 661.

Reviewing testimony from the probation revocation hearing in *Bearden*, the Supreme Court observed:

> While the sentencing court commented on the availability of odd jobs such as lawn mowing, it made no finding that the petitioner had not made sufficient bona fide efforts to find work, and the record as it presently stands would not justify such a finding. . . . The State argues that the sentencing court determined that the petitioner was no longer a good probation risk. In the absence of a determination that the petitioner did not make sufficient bona fide efforts to pay or to obtain employment in order to pay, we cannot read the opinion of the sentencing court as reflecting such a finding.

*Id.* at 673-74.

 Arkansas has adopted statutory guidelines as to what matters shall be considered by a court reviewing revocation of a probationary sentence for failure to pay restitution. Arkansas Code Annotated § 5-4-205 (Repl. 1993) provides as follows:

> (2) In determining whether to revoke probation or conditional release, the court or releasing authority shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.

*Id.* § 5-4-205(c)(2). The record in the case before us contains no finding of fact that Jordan's delinquency in making restitution payments resulted from a willful refusal to pay, rather than from an inability to pay, and the record as it stands would not justify such a finding. There is a finding that his friends and family have failed to help him make restitution, but it is not reasonable to conclude that this lack of assistance from others establishes Jordan's willful refusal to pay.

There are no findings as to Jordan's total earnings, what employment he was able to secure for what period of time, whether he owned an automobile or other property, or whether he had access to resources of his own that he willfully refused to apply to the payment of restitution. We note that the indigent status of Jordan is not addressed in the record of this case, although it is clear that this appeal is *in forma pauperis.*

 This contrasts with the record in *Hoffman v. State,* 289 Ark. 184, 711 S.W.2d 151 (1986), where we found that the trial court's decision to revoke probation was not clearly against a preponderance of the evidence when a full disclosure of defendant's earnings of $8,211.75 and application of those funds to payments including restitution was part of the evidence considered by the trial court. In *Hoffman,* we affirmed the decision of the trial court, stating:

> Appellant's failure to make the ordered payments, in light of his standard of living, his purchase of a $17,000 car, and the fact that he did not search for a job outside the field of auto sales, can be

construed as an inexcusable failure to comply with the conditions of his suspension.

*Id.* at 189, 711 S.W.2d at 153.

Where there is no determination that the failure to pay restitution is willful, it is clear that a probationer cannot be punished by imprisonment solely because of a failure to pay. The Supreme Court in *Bearden* stated: "[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Bearden*, 461 U.S. at 667-68 (quoting *Tate v. Short*, 401 U.S. 395 (1971)); *see also Williams v. Illinois*, 399 U.S. 235 (1970).

A defendant's failure to make bona fide efforts to seek employment or to borrow money to pay restitution may justify imprisonment. Under Arkansas law, probation may be revoked if the trial court finds by a preponderance of the evidence that the defendant inexcusably failed to comply with a condition of probation. Ark. Code Ann. § 5-4-309(d) (Repl. 1993); *see also* Ark. Code Ann. § 5-4-310 (Repl. 1993). *See, e.g., Hoffman*, 289 Ark. at 189, 711 S.W.2d at 153. Considerations such as those enumerated in Ark. Code Ann. § 5-4-205(c)(2), as quoted above, are required before probation is revoked.

■ Jordan makes two additional arguments. The first is that imposition of consecutive sentences aggregating thirty-five years constitutes cruel and unusual punishment. We do not address this argument because it was not made to the trial court. Even constitutional arguments are waived when they are not argued below. *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994).

■ The second argument is that the trial court abused its discretion in ordering the sentences to run consecutively. We do not reach this issue because the case is remanded on other grounds. We note that throughout the proceedings the trial court repeatedly stated that it did not wish to send Jordan to prison, but was primarily concerned about his making restitution to Mr. Helvey. As we remand this case for a determination whether Jordan's failure to pay reflects a willful refusal to comply with the

order of restitution or simply the inability to pay, the trial court will have the opportunity to engage in a careful balancing of all relevant factors when deciding whether probation should be revoked, and if revoked, what punishment should be imposed.

Because there was no determination that Jordan's failure to pay restitution was the result of a willful refusal to pay, rather than an inability to pay, we have concluded that the judgment revoking the probation must be reversed and the case remanded.