2009 Ark. App. 809

**Russell Allen HANNA, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–121.**

Court of Appeals of Arkansas.

Dec. 2, 2009.

Hancock, Lane & Barrett, Little Rock, by: Jonathan T. Lane, for appellant.

Dustin McDaniel, Att'y Gen., by: Nicana C. Sherman, Ass't Att'y Gen., for appellee.

D.P. MARSHALL JR., Judge.

The circuit courts often condition probation or the suspended imposition of a sentence on restitution. Ark.Code Ann. § 5-4-205(f) (Supp.2009). When a defendant fails to pay and resists revocation by asserting an inability to pay, what amount and kind of evidence must the State offer to justify revocation?

## I.

In 2004, Russell Hanna pleaded guilty to Class "C" felony nonsupport. Ark.Code Ann. § 5-26-401(a), (b)(2)(B) (Supp.2009). The circuit court placed Hanna on 10 years' supervised probation and ordered him to make restitution of his $19,382.00 child-support arrearage. The court fixed the restitution payment in monthly installments of $163.00. This obligation was on top of his existing weekly $53.00 child-support obligation. The State first petitioned to revoke Hanna's probation in 2004, but this petition was dismissed at the probation officer's request. In 2008, the State again petitioned to revoke.

The revocation hearing was short. The probation officer testified that Hanna currently owed around $32,000.00 in child support, and had made only one payment of $300.00 within the last year. The court admitted the 2004 guilty-plea agreement, conditions of probation, and payment order into evidence. They showed Hanna's $163.00-a-month and $53.00-a-week obligations. The probation officer also testified that a petition to revoke Hanna's probation had been filed "last year" due to nonpayment—this was either the 2004 petition or a 2007 petition that does not appear in the record. Finally, the probation officer acknowledged on cross-examination that Hanna was disabled.

Hanna also testified. He confirmed that he was disabled. He also said that his $637.00 monthly social security supplemental income was his only source of income. Hanna stated that he was and is unable to work. He also said that he had been disabled when he signed the plea agreement in 2004. He signed the agreement because "[w]ell, I just—I wasn't able to—I wasn't able to work, but I had—you know,

I had to do what I could when I could." On cross-examination, Hanna clarified that his wife had made the $300.00 payment. The State asked: "Do you have any change of circumstances that has happened in the last two years that has prevented you from making efforts to change that was not there in Two Thousand and Seven?" Hanna gave a nonresponsive answer: "I'm just not able to work."

On this record, the circuit court granted the State's petition. The court found that "the [S]tate has met its burden of proof, and that the probation is hereby revoked." A few weeks later, after a second hearing, the court suspended imposition of nine years' sentence and sentenced Hanna to one year in prison. Hanna appeals.

## II.

Two statutes, one general and one specific, frame Hanna's appeal. Probation may be revoked "if a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension or probation." Ark.Code Ann. § 5–4–309(d) (Supp.2009). This is the general revocation statute. It applies whenever a defendant allegedly violates any condition of a probated or suspended sentence. *E.g.,* *Richardson v. State,* 85 Ark.App. 347, 350–51, 157 S.W.3d 536, 538–39 (2004) (failure to surrender as ordered). In 1993, as a part of a comprehensive statute governing restitution, the General Assembly adopted restitution-specific revocation provisions. Act of 16 March 1993, No. 533, 1993 Ark. Acts 1493; Act of 16 March 1993, No. 553, 1993 Ark. Acts 1635. When restitution is ordered as a condition of probation, and the defendant has failed to pay, a court may revoke "if the defendant has not made a good faith effort to comply with the order." Ark.Code Ann. § 5–4–205(f)(2). This statute lists the kinds of facts that will reveal the probationer's good-faith effort or lack thereof. "In determining whether to revoke probation" for a failure to pay restitution, the court "shall consider" the defendant's employment status, earning ability, financial resources, the willfulness of the failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay. Ark.Code Ann. § 5–4–205(f)(3)(A)–(E).

The leading precedent recognizes that both statutes apply in these cases. *Jordan v. State,* 327 Ark. 117, 122, 939 S.W.2d 255, 257 (1997). A good-faith effort to pay restitution is daylight to an inexcusable failure to pay's dark. Indeed, before the General Assembly spoke with specificity in what is now § 5–4–205(f)(3) about some of the various facts bearing on good faith, the supreme court and this court were considering probationers' particular economic circumstances, the quantity of their efforts to pay, and the quality of those efforts in deciding whether failures to pay restitution were inexcusable. *E.g., Hoffman v. State,* 289 Ark. 184, 189–90, 711 S.W.2d 151, 153–54 (1986) (standard of living, purchase of $17,000.00 car, and limited job search); *Baldridge v. State,* 31 Ark.App. 114, 117–18, 789 S.W.2d 735, 737–38 (1990) (young probationer made some payments while supporting four dependents by doing all available manual labor). This inquiry reflects the "delicate balance between the acceptability, and indeed wisdom, of considering all relevant factors when determining an appropriate sentence for an individual and the impermissibility of imprisoning a defendant solely because of his lack of financial resources." *Jordan,* 327 Ark. at 120, 939 S.W.2d at 256 (quoting *Bearden v. Georgia,* 461 U.S. 660, 661, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)).

The State must prove by a preponderance of the evidence that the probation-

er inexcusably failed to comply with his payment obligation. Ark.Code Ann. § 5–4–309(d). Our cases recognize and apply a shifting burden here. "[O]nce the State has introduced evidence of nonpayment, the burden of going forward does shift to the defendant to offer some reasonable excuse for his failure to pay." *Reese v. State*, 26 Ark.App. 42, 44, 759 S.W.2d 576, 577 (1988). The State typically introduces a payment ledger or testimony demonstrating nonpayment. This kind of evidence shifts the burden of going forward, which is also known as the burden of production. BLACK'S LAW DICTIONARY 209 (8th ed. 2004). But the State always retains the ultimate burden of proving that the probationer's failure to pay was inexcusable. *Ibid.; Thompson v. State*, 2009 Ark. App. 620, at 2, 2009 WL 3153210; *see also* BLACK'S LAW DICTIONARY 209 (8th ed. 2004) (distinguishing between the two components of the burden of proof: the burden of persuasion and the burden of production or going forward).

This shifting burden of production draws out the probationer's reason for nonpayment. *Reese*, 26 Ark.App. at 44, 759 S.W.2d at 577. "[T]he probationer can[not] sit back and rely totally upon the trial court to make inquiry into his excuse for nonpayment." *Brown v. State*, 10 Ark. App. 387, 389, 664 S.W.2d 507, 508 (1984). Nor must the State negate every possible excuse for nonpayment—an impossible task—in its case in chief. *Reese, supra.* The probationer must explain his failure to pay. If he asserts an inability to pay, then the State must carry its ultimate burden of demonstrating no good-faith effort by a preponderance of the evidence. The State must carry this burden of proof guided by the § 5–4–205(f)(2) & (3) factors. *Jordan*, 327 Ark. at 121–22, 939 S.W.2d at 257; *Phillips v. State*, 101 Ark.App. 190, 192–93, 272 S.W.3d 123, 125 (2008). When the probationer asserts an inability to pay, the State may not stand on the fact of nonpayment alone. *Jordan*, 327 Ark. at 121–22, 939 S.W.2d at 257; *Phillips*, 101 Ark. App. at 192–93, 272 S.W.3d at 125.

The State can carry its burden in many ways. It can undermine the probationer's credibility, which is a matter for the circuit court to judge. *Gossett v. State*, 87 Ark.App. 317, 319–20, 191 S.W.3d 548, 549–50 (2004). The State can show a lack of effort. "[A] defendant's failure to make bona fide efforts to seek employment or to borrow money to pay restitution may justify imprisonment." *Gossett*, 87 Ark.App. at 319, 191 S.W.3d at 549; *see also Thompson v. State*, 2009 Ark. App. 620, at 5, 2009 WL 3153210. The State can show that the probationer is spending his money on something nonessential or illegal instead of paying restitution. *E.g., Williams v. State*, 2009 Ark. App. 554, at 4, 2009 WL 2778000.

This list is illustrative, not exhaustive. The restitution-specific revocation statute should guide the proof, both the probationer's proof of a good-faith effort and the State's responding proof showing no such effort. What is the probationer's employment status and his earning ability? What are his financial resources? What is his payment history? What are all the relevant circumstances about the willfulness of his nonpayment and his ability to pay? Ark.Code Ann. § 5–4–205(f)(3). And just as it guides the proof, this statute must guide the circuit court's findings in a purported inability-to-pay case. *Jordan*, 327 Ark. at 120–22, 939 S.W.2d at 256–57.

Some of our precedents emphasize the good-faith inquiry under § 5–4–205(f), while others consider the issue as a matter of inexcusability under § 5–4–309(d). *Compare Gossett*, 87 Ark.App. at 319–20, 191 S.W.3d at 549–50, *with Thompson v.*

*State,* 2009 Ark. App. 620, at 2–5, 2009 WL 3153210. There is less to this distinction than meets the eye. Willfulness is a specified factor under the restitution-specific statute, and this factor overlaps with inexcusableness under the general revocation statute. We routinely consider the probationer's employment record, as well as what he is spending his money on, no matter which statute we cite. To the extent there is any conflict between the statutes, of course the more specific provision controls. *E.g., Wal–Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P.,* 374 Ark. 489, 494, 288 S.W.3d 627, 632 (2008). But we see no conflict. As *Jordan* holds, we, and the circuit courts, must apply § 5–4–309(d)'s general "inexcusably failed to comply" standard as refined by § 5–4–205(f)'s restitution-specific factors in all failure-to-pay cases where the probationer asserts an inability to pay. *Jordan,* 327 Ark. at 120–22, 939 S.W.2d at 256–57.

### III.

In this case, the State failed to prove an inexcusable failure to pay by a preponderance of the evidence. The State offered proof of nonpayment. *Reese, supra.* Hanna's probation officer testified that Hanna had made only one payment in the last year. This evidence shifted the burden of going forward to Hanna. He had to produce evidence showing, in light of all material circumstances, a good-faith effort to pay. Ark.Code Ann. § 5–4–205(f)(2). Or as expressed in our older cases, he had to offer a reasonable excuse for his nonpayment. *Baldridge,* 31 Ark. App. at 116, 789 S.W.2d at 737.

He did. At the hearing, Hanna testified that he was disabled and unable to work. He said that he had only one source of income: his monthly SSI disability benefits. Hanna's SSI is not income for child-support purposes. *Davis v. Of-*

*fice of Child Support Enforcement,* 341 Ark. 349, 358, 20 S.W.3d 273, 278 (2000). Hanna made this argument at his sentencing hearing, but has abandoned it on appeal. We must therefore consider the circuit court's decision in the case as if Hanna had $637.00 in monthly income. In addition, the State proved a monthly support/restitution obligation of almost $400.00, and one $300.00 payment made with the help of Hanna's wife. The probation officer and Hanna agreed on another fact: Hanna was disabled. Finally, the State proved that Hanna had promised, in his plea agreement, to make restitution when his circumstances were about the same as they were at the time of revocation. The circuit court concluded, on this record, that the State had met its burden of proof.

We are left with the definite and firm conviction that the circuit court made a mistake. *Foster v. State,* 104 Ark.App. 108, 109–10, 289 S.W.3d 476, 477 (2008); *Ridenhour v. State,* 98 Ark.App. 116, 119–20, 250 S.W.3d 566, 569 (2007). Hanna's failure to pay was undisputed. Hanna asserted an inability to pay based on disability. The State's proof had confirmed his disability. There was thus no credibility judgment for the circuit court to make on this issue. *Cf. Hodgson v. State,* 2009 Ark. App. 691, at 2–3, 2009 WL 3384437. The State did show that, through his wife, Hanna was able to make one payment. *Cf. Gossett,* 87 Ark.App. at 319–20, 191 S.W.3d at 549–50. The State offered no evidence, however, of Hanna's other sources of income, his assets, or his expenses. *Cf.* Ark. Code Ann. § 5–4–205(f)(3). The State could have done so by cross-examining Hanna about these facts. Or the State could have offered proof about them in rebuttal. None of this was done. Taken as a whole, the preponderance of the evidence does not weigh in favor of a lack of

good-faith effort or an inexcusable failure to pay. The State simply failed to prove, either directly or circumstantially, that Hanna's failure to pay restitution was based on anything other than his inability to pay. That circumstance is an insufficient basis for revocation. *Jordan, supra.*

### IV.

In almost every similar case where the appellate court has reversed, the court also remanded for more findings on the existing record. *E.g., Bearden,* 461 U.S. at 674, 103 S.Ct. 2064; *Jordan,* 327 Ark. at 123, 939 S.W.2d at 258; *Phillips,* 101 Ark.App. at 193, 272 S.W.3d at 125. But the records in those cases were full of facts, and the defect was in the trial court's incomplete findings on those facts. This case is different. The defect here is in the proof, not in the findings on the proof. And the failure of the State's proof requires that we reverse the revocation order and dismiss the petition. *Wilcox v. State,* 99 Ark. App. 220, 222, 258 S.W.3d 785, 787 (2007).

Hanna's underlying obligation to support his child, as reflected in the original support order, remains intact. "A parent has a legal and moral duty to support and educate his child and to provide the necessities of life. . . ." *Lee v. Lee,* 95 Ark. App. 69, 75, 233 S.W.3d 698, 703 (2006). Hanna's obligation to make restitution for back child support, as agreed in the 2004 payment order, likewise remains undisturbed. Judgment and commitment order reversed and petition to revoke dismissed.

VAUGHT, C.J., and HART, KINARD, and BAKER, JJ., agree.

PITTMAN, GLADWIN, GLOVER, and HENRY, JJ., dissent.

DAVID M. GLOVER, Judge, dissenting.

I disagree with the majority's analysis in this felony nonsupport probation revocation matter resulting in a 5–4 decision. The case turns on one's interpretation of the sufficiency of proof to shift the burden of going forward. *See Reese v. State,* 26 Ark.App. 42, 759 S.W.2d 576 (1988); *Brown v. State,* 10 Ark.App. 387, 664 S.W.2d 507 (1984).

In an even-handed manner the majority opinion lays out the statutory provisions for general revocation (inexcusable failure) and restitution-specific revocation (good-faith effort). The opinion then fairly and accurately identifies and applies those controlling decisions of this court and our supreme court.

Legal principles have been developed over time that govern all probation revocation hearings. The burden of proof for the State is a preponderance of the evidence. *Stinnett v. State,* 63 Ark.App. 72, 973 S.W.2d 826 (1998). The Arkansas Rules of Evidence are not strictly applied in revocation hearings. *Tipton v. State,* 47 Ark. App. 187, 887 S.W.2d 540 (1994). The State need only prove one violation to sustain revocation. *See Brock v. State,* 70 Ark.App. 107, 14 S.W.3d 908 (2000). Our appellate courts defer to the superior position of the trial court on questions of credibility and the weight to be given the evidence. *Gossett v. State,* 87 Ark.App. 317, 191 S.W.3d 548 (2004). This court will not reverse the trial court's decision to revoke probation unless it is clearly against the preponderance of the evidence. *Stinnett, supra.*

The trial judge knew a great deal more about Russell Hanna, the probationer, than what was revealed at the revocation hearing:

1. *The Conviction*

Hanna had a child out of wedlock in 1994; his failure to support began in 1996; his non-support continued eight years until 2004; in 2003 a Class C

felony non-support information was filed; in 2003, Hanna filed an affidavit of indigency stating that he was single, he lived with Amanda Dixon, with whom he had two additional younger children, and his employer was "Razorback"; in 2004 Hanna pleaded nolo contendere to the Class C felony offense of non-support because he was in arrears on his child-support obligation in the sum of $19,382; Hanna was given a break—he was not sentenced to prison for this felony, rather he was sentenced to ten years' supervised probation; one condition of probation was that he make restitution of the child-support arrearage in monthly installments of $163 in addition to paying his current support obligation of $53 per week.

2. *The State's First Revocation Petition*

The State filed a petition to revoke Hanna's probation in 2004; in 2006 Hanna posted a $2500 bond and completed an affidavit of indigency in which he stated Dixon was now his wife, they still had two children who lived in the home with them, and he was not employed at that time; Hanna engaged an attorney who entered his appearance on September 7, 2006, and requested a continuance the same day; in May 2007, Hanna caught another break when an order was entered dismissing the petition for revocation at the request of the probation officer; in June 2007, Hanna made a $300 payment.

3. *The State's Second Revocation Petition*

On May 16, 2008, the State filed another petition to revoke Hanna's probation, alleging delinquency in the payment of his restitution; in June 2008, Hanna posted a $2500 bond; as of August 2008, he was in arrears on his child-support obligation in the amount of $31,999.70. At the revocation hearing, Hanna's probation officer stated he was aware that Hanna was disabled. Hanna testified he was disabled when he pleaded guilty in 2004; that he knew then he was going to have to pay restitution; and that he agreed to that condition when he was placed on probation. Hanna acknowledged nothing had changed from 2007 to 2008, and that his wife helped him to make the $300 payment in 2007. He said he could not live up to his obligations because he was unable to work. Hanna was represented by counsel at the revocation hearing.

What a probationer must do when the burden of going forward passes to him is not a new concept. Our court, in *Brown, supra,* a revocation case not involving non-support, offered instruction to all probationers:

In the instant case, appellant was represented by counsel and little, if any, explanation was provided by appellant for his failure to pay restitution. In such proceedings where the probationer is represented by counsel, we do not believe the probationer can sit back and rely totally upon the trial court to make inquiry into his excuses for non-payment. The defendant should go forward with whatever evidence he has in an attempt to establish excusable reasons why he did not pay the fine or restitution.

*Brown,* 10 Ark.App. at 389, 664 S.W.2d at 508.

Likewise, our court again echoed this sentiment toward "burden shifting" in *Reese, supra,* as follows:

The burden of proof does not shift. However, once the State has introduced evidence of non-payment, the burden of going forward does shift to the defendant to offer some reasonable excuse for his failure to pay. To hold otherwise

would place a burden upon the State which it could never meet—it would require the State, as part of its case in chief, to negate any possible excuses for non-payment.

*Reese*, 26 Ark.App. at 44, 759 S.W.2d at 577 (citations omitted); *see also Thompson v. State*, 2009 Ark.App. 620, 2009 WL 3153210.

Our appellate courts in more recent cases have even offered proof sources for nonsupport probationers. A probationer may avoid the determination that his failure is willful if he shows bona fide efforts to seek employment or to borrow money to pay restitution. *Jordan v. State*, 327 Ark. 117, 939 S.W.2d 255 (1997); *Gossett, supra.*

The record is telling about this probationer for appellate review purposes. It shows Hanna had some means of financial ability, but he failed to pay. The record also shows that Hanna had the ability to work; but, when asked, he asserted his inability. In separate affidavits of indigency, Hanna declared he was employed in 2004 and unemployed in 2006. Facing successive petitions to revoke, in 2006 and again in 2008, he posted separate $2500 bonds. *See Gossett, supra* (evidence of ability to secure money for release from jail following arrest is factor to be considered in failure to pay restitution). Following the dismissal by the State in 2007 of the 2004 revocation petition and, thereby dodging imprisonment for the second time, Hanna immediately showed the ability to pay $300. At his revocation hearing, he attributed help with the $300 payment to his wife. Further, with counsel present at his revocation hearing, he did not conform his proof to the *Jordan/Gossett* standard by showing bona fide efforts to seek employment or to borrow money. The record implies that doing either obviously was not a priority for him. Instead, as in *Brown, supra*, he "[sat] back." On direct examination, he merely offered his opinion of his inability to work. When cross-examined by the State, he was clearly evasive, again asserting that he was "just not able to work." His statement of opinion, without more, is simply not an explanation as to why he was unable to pay his child-support payments. It is plausible that the judge did not believe Hanna's assertions. I find it compelling that the record reflects no attempt by Hanna to have the amount of his child support reduced due to a change in his circumstances.

The revocation hearing began with the testimony of Hanna's probation officer and then quickly turned to the testimony of Hanna himself, they being the only witnesses. The hearing was indeed short! Just as the State presented a weak case, Hanna equaled the effort. But because of the case history, which could be supplemented by the State's proof, the State did enough.

This brings us squarely to the issue that separates five members from four members on this court when deciding the disposition of this case. The majority concludes Hanna did enough (showed up) and said enough ("I'm disabled"). On this premise, the majority interprets our case law that Hanna, through his magic words, shifted the burden back to the State. I think not. "I'm disabled," in my view, is Hanna's opinion, nothing more. Historically, it was the same disabled person who pleaded nolo contendere to Class C felony nonsupport in 2004; and the same disabled person who increased his criminal-debt responsibility of $19,382 in 2004 to $31,999 in 2008—a $12,600 increase after he had received breaks both in 2004 and 2007 with no imprisonment. The State met its burden of going forward, and that burden shifted to Hanna when the State showed he made one support/restitution payment in 2007 and there existed a $31,999 arrearage in 2008. In my view, Hanna failed to meet his shifting burden.

By its analysis, the majority has eviscerated any responsibility accorded our circuit courts for judging credibility and determining the weight to be afforded witness testimony, an established legal principle governing revocation proceedings.

Here, the trial court knew the long history of Hanna's noncompliance when it considered the short hearing record made by the parties. By his own admission, Hanna acknowledged there was no change in his circumstances since he had been placed on probation and agreed to the restitution payment schedule. He had promised to pay then. His word is important. People actually depended on it; there was reliance on his word. Hanna, however, had obviously done nothing, ever; and it was thereby no accident he was again facing revocation with his own attorney by his side in 2008. The majority will agree that he completely and totally abdicated even the barest effort to be a responsible parent. Why did he? I contend that it was a deliberate choice. But, again, the case does not turn on either of these observations. Because they are true, however, these observations do take away any argument Hanna could otherwise have made as a reasonable excuse for his failure to pay. From my review of the record, I cannot classify his failure as excusable or reasonable.

The majority rests on its conclusory statement, "The State's proof had confirmed his disability." Hanna's "disability," though, was not a new or different factor at the hearing. It was an historical constant in this case. Hanna testified he had become disabled in 1994, which happens to be the birth year of his oldest child, whom he quit supporting in 1996, leading to his exposure to the criminal-justice system in 2003.

There is an SSI reference woven into the majority's opinion. Hanna testified at the hearing he was drawing SSI disability benefits. For reasons later stated, he apparently had just begun to receive his SSI stipend. For our purposes, in considering this appeal, it does not matter that the majority is willing to concede the availability of the $637 monthly SSI benefit Hanna is now receiving "since his argument on this point at the sentencing hearing was abandoned on appeal." The record does not reflect when Hanna qualified for SSI, which is not income for child-support purposes. From the sentencing hearing (which is not a part of the liability determination), we know the State at that time had begun the process of closing its file on Hanna in compliance with federal policy protecting SSI recipients. I therefore conclude Hanna was appropriately charged and later arrested, at which time he bonded his release for appearance at the revocation hearing to address his pre-SSI nonsupport liability. It is not known when he qualified for SSI benefits, but the matter of SSI was first put in the record at the revocation hearing.

I dissent because I am left with the definite and firm conviction that the circuit court did not err. When considering the lower burden of proof in revocation proceedings and giving the proper deference to the superior position of the trial court to determine questions of credibility and the weight to be given the evidence, the State sufficiently met its burden of proof to revoke Hanna's probation. The trial court found that the State had met its burden of proof and ordered revocation of Hanna's probation, and I would affirm that revocation.

I am authorized to state that Judges PITTMAN, GLADWIN, and HENRY join in this dissent.