2011 Ark. App. 760

**Mable NEWSOM, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–558.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Kent R. Walker, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Kathryn Henry, Little Rock, for appellee.

DOUG MARTIN, Judge.

Appellant Mable Newsom appeals from the Pulaski County Circuit Court's decision to extend her probationary period for an additional three years after she failed to pay restitution as ordered. Newsom argues that the trial court erred in not properly considering the factors under Arkansas Code Annotated section 5–4–205(f)(3) (Supp.2001) in determining whether she made a good-faith effort to comply with the conditions of her probation. Newsom also argues that the trial court erred in finding that the State proved her nonpayment of restitution was inexcusable. We affirm.

Newsom pleaded guilty to theft of property on December 12, 2005, and was sentenced to five years' probation and ordered to pay restitution in the amount of $8,190 at the rate of $300 per month beginning January 6, 2006. Newsom was also ordered to pay fines and costs and complete 100 hours of community service within one year.

On February 7, 2008, an "Order of Conditions of Probation" was signed by Newsom, her defense counsel, her probation officer, and the judge and provided that Newsom's probation was extended for a period of thirty-four months. Newsom was again ordered to pay restitution in the amount of $8,190 at the reduced rate of $241 per month. Newsom was also ordered to pay fines and costs and to complete twenty-eight hours of community service within one year.

The State filed a petition to revoke Newsom's probation on November 4, 2010, alleging that Newsom had violated the terms and conditions of her probation by failing to report to her probation officer, failing to pay restitution in the amount of $8,190, failing to pay $20 per month for supervision fees, and failing to pay $1,405 in fines and court costs.

A revocation hearing was held on February 24, 2011, at which Alice Abson, Newsom's probation officer, testified that, although Newsom had "made some payments" toward restitution, Newsom still owed approximately $7,000. According to Abson, Newsom's last restitution payment was made on May 25, 2010, in the amount of $50. Abson testified that Newsom told her she was unable to make payments because she could not find employment. Abson stated that, when Newsom was employed, she made payments toward restitution. According to Abson, in July 2009, the trial judge at that time ordered Newsom's payments reduced from $241 per month to $50 per month because of Newsom's inability to pay restitution. Abson testified that Newsom reported as required and was compliant with the other conditions of her probation.

Cherie Hughes, Newsom's sister, testified that Newsom had been living with her, her husband, and her two children for more than two years. Hughes stated that Newsom lived with her because Newsom had nowhere else to live given Newsom's unemployment. Hughes testified that Newsom suffered from lupus and diabetes. According to Hughes, Newsom's past employment was "sporadic." Although Hughes testified that Newsom did search for employment, Hughes was uncertain how often Newsom searched for employment because Hughes was at work during the day.

Newsom testified that she has been in the clerical profession for forty years. Newsom stated that her most recent employment was with AARP in December 2010 but that it was only a part-time, temporary job. Newsom stated that she intended to return to her job as a substitute teacher but that, when she applied for a full-time position at the school, Newsom was told she could not return because the school district discovered she had a felony conviction. Newsom testified that her W–2 form from the previous year reflected earnings of $3,100. According to Newsom, she suffered from lupus, diabetes, high blood pressure, cirrhosis, and bronchitis, for which she needed medication every month. Newsom testified that she had gone without medicine in order to pay toward the restitution she owed.

Newsom stated that she last sought work "a couple of weeks ago" and that she was offered a job at a business named Sykes. According to Newsom, she informed the prospective employer at Sykes that she had a felony conviction prior to receiving a job offer. Nevertheless, the offer was rescinded when Sykes ran a background check on Newsom. Newsom claimed that her felony record was the basis for rejection by prospective employers one hundred percent of the time. Newsom stated that she applied to be a waitress but that "they can pull it up and see if you have a felony." Newsom testified that, when her restitution payments were reduced to $50 per month, the trial judge presiding at that time was satisfied that she was searching for work but was simply unable to pay.

On cross-examination, Newsom testified that she had internet access at her sister's house but that there was no public transportation immediately available. Newsom admitted that, when her sister and brother-in-law could not drive her somewhere to utilize public transportation, she could have asked a neighbor for transportation. Newsom testified that she had begun taking classes at ITT to finish her paralegal studies and that the school was searching for a job for her. Newsom said that, when she completed her paralegal studies, she intended to go to law school, which she said would be paid for by the government. Newsom said that there were times when her health prevented her from "getting up every day" and that she was trying to obtain disability benefits. Newsom stated that she was previously denied disability benefits because she failed to attend all of her scheduled doctor's appointments but that this was due to her lack of transportation. Newsom stated, "I'm trying to get on disability right now." Newsom further stated that, in order to get disability benefits, she had "some loopholes that [she had] to go around to try to get on [her] disability" and that she had not yet been approved.

Upon further questioning by the trial judge, however, Newsom stated that she was denied disability benefits in 2008 because she lacked the appropriate paperwork and that she had not made any attempt to refile for such benefits since that time, thus admitting that she did not

have a pending claim for disability benefits. When the judge asked Newsom if she had applied as a waitress anywhere other than a Denny's restaurant, Newsom eventually admitted that she had not applied for a position as a waitress at any other restaurant. Newsom conceded that she had not been actively searching for a job within the previous two weeks but again claimed that ITT was searching on her behalf. Newsom also claimed that she perused the Sunday newspaper every week and applied, typically online, for whatever positions were available. When pressed about what jobs she had applied for online in the previous two weeks, however, Newsom admitted she had applied for only one—a position with AT & T.

According to Newsom, she pleaded guilty to theft of property in 2005 only to avoid jail. She continued, "[T]hen I went to the federal courts, and which is where I'm still involved and trying to get this whole thing overturned." Newsom further testified, "That's why I continue to apply for customer service positions because I'm not considering myself a criminal." The prosecutor then introduced into evidence an order showing that Newsom's federal habeas corpus petition was denied in March 2008, effectively rebutting Newsom's claim that the matter was pending.

In its ruling from the bench, the trial court found Newsom was not a credible witness, noting her claim to have admitted on the job application at Sykes that she had a felony conviction and her claim that a federal habeas corpus petition was pending. The court also stated:

> The bottom line is whether Ms. Newsom is willfully failing to pay restitution. She can't have money to pay restitution if she isn't trying to find a job. And while Ms. Newsom says she's trying to find a job, $50.00 a month, while it is a serious amount of money, isn't an amount of money that can't be found by somebody who is trying to find a job because there are people who will give you part-time work even if you have a criminal record.

The trial judge specifically stated that he was not convinced that Newsom was unable to find employment. At the conclusion of the hearing, the trial court chose to continue Newsom's probation for three additional years and ordered her to pay restitution as previously ordered in the amount of $7,071.

We will uphold a trial court's probation-revocation determination unless the decision is clearly against the preponderance of the evidence. *Barringer v. State*, 2010 Ark. App. 369, 2010 WL 1708145. Because the determination of a preponderance of the evidence turns on questions of credibility and weight to be given to the testimony, we defer to the trial judge's superior position in credibility determinations. *Id.* The State need only prove that the appellant committed one violation of the terms and conditions of her probation in order to revoke probation. *Rudd v. State*, 76 Ark.App. 121, 61 S.W.3d 885 (2001).

This court explained in *Hanna v. State*, 2009 Ark.App. 809, 372 S.W.3d 375, that a probation violation arising from a failure to pay restitution invokes the application of two statutes, one general and one specific. The general statute applies when an individual is accused of violating any condition of probation. *Id.* Under this statute, probation may be revoked if a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of her probation. Ark. Code Ann. § 5–4–309(d) (Supp.2005). The more specific statute applies when restitution is ordered as a condition of probation. *See* Ark.Code Ann. § 5–4–205(f)(2) (Supp. 2001). When restitution is a condition of

probation, and the defendant fails to pay, a court may revoke if the defendant has not made a good-faith effort to comply with the order. *Id.*

 Newsom acknowledges that the State introduced evidence that she did not pay restitution as ordered, given her probation officer's testimony and her own testimony in which she admitted she did not pay restitution; however, Newsom contends that the State did not prove that her failure to pay restitution was willful. Once the State has introduced evidence of nonpayment of restitution, the burden shifts to appellant to offer some reasonable excuse for her failure to pay. *Hanna, supra.* It is the probationer's obligation to justify her failure to pay, and this shifting burden of production draws out the probationer's reason for nonpayment. *Id.* If she asserts an inability to pay and provides evidence demonstrating that inability, then the State must carry its ultimate burden of demonstrating no good-faith effort by a preponderance of the evidence. *Id.* Once the assertion of inability to pay is made, the State can then carry its burden in various ways. *Id.* It can undermine the probationer's credibility, or it can show a lack of effort, such as a failure to make bona fide efforts to seek employment or to borrow money to pay restitution. *Id.* Newsom asserted her inability to pay restitution, but it is clear that the trial court found that the State ultimately carried its burden of proof by undermining Newsom's credibility and by showing that Newsom failed to make bona fide efforts to find employment. Nevertheless, Newsom contends that the trial court did not properly consider the factors enumerated at Arkansas Code Annotated section 5–4–205(f)(3). In determining whether to revoke probation, the court shall consider the following:

(A) The defendant's employment status;

(B) The defendant's earning ability;

(C) The defendant's financial resources;

(D) The willfulness of the defendant's failure to pay; and

(E) Any other special circumstances that may have a bearing on the defendant's ability to pay.

Ark.Code Ann. § 5–4–205(f)(3).

 There is no evidence that the trial court failed to consider the factors listed above. Newsom testified as to these factors on both direct and cross-examination and, further, answered the trial judge's own questions pertaining to these factors. In any event, the trial court did not revoke Newsom's probation but only extended it to permit Newsom additional time in which to pay the restitution she owes.

If the court places a defendant on probation conditioned upon her making restitution, and the defendant has not satisfactorily made all of her payments when the probationary period has ended, the court may continue to assert jurisdiction over the recalcitrant defendant and, either extend the probationary period as the court deems necessary or revoke the defendant's suspended sentence. *See* Ark.Code Ann. § 5–4–303(h)(2) (Supp.2001). The trial court was entitled to extend Newsom's probationary period until she pays restitution as ordered, and we therefore affirm on this point.

 Next, Newsom argues that the State failed to prove by a preponderance of the evidence that she inexcusably failed to pay restitution in accordance with Arkansas Code Annotated section 5–4–309(d). In ruling from the bench, the trial court found that, had Newsom made a greater effort to find even part-time work, she could have paid $50 per month in compliance with her probation. Indeed, the trial court was lenient in substantially reducing the amount of Newsom's restitution payments from the $300 per month that was

initially ordered to only $50 per month. The trial court specifically did not believe Newsom's assertion that she was actively searching for employment in order to pay the $50 per month. We defer to the trial judge on matters of credibility. *Barringer, supra.* We cannot say that the trial court's decision to extend Newsom's probationary period to permit her an additional three years within which to pay the restitution owed was clearly against a preponderance of the evidence. Accordingly, we affirm.

Affirmed.

HART and GLOVER, JJ., agree.