--------
KENNETH S. HIXSON, Judge *57 Appellant Ahmad Joseph pleaded guilty to theft by receiving on March 27, 2008, and was sentenced to one and a half years in prison followed by an eight-and-a-half-year suspended imposition of sentence (SIS). Ahmad's SIS was conditioned on him paying $ 800 in restitution at a rate of $ 50 per month beginning sixty days after his release. On June 30, 2010, Ahmad pleaded guilty to residential burglary, theft of property, and forgery, and was sentenced to seven years in prison followed by a ten-year SIS. In that case, Ahmad's SIS was conditioned on him paying $ 1492 in restitution at a rate of $ 50 per month beginning sixty days after his release.
On October 12, 2017, the State filed a petition to revoke Ahmad's suspensions based on its allegation that Ahmad had violated his conditions by failing to pay restitution as ordered. The State alleged that there was an unpaid balance of $ 495 with respect to the first SIS, and that Ahmad had paid nothing toward the $ 1492 restitution with respect to the second SIS. After a hearing held on June 1, 2018, the trial court found that Ahmad had violated his conditions. On June 25, 2018, the trial court entered a sentencing order revoking each SIS and sentencing Ahmad to concurrent prison terms of two years followed by a six-year SIS.
In order to revoke a suspended imposition of sentence, the trial court must find by a preponderance of the evidence that the defendant has inexcusably violated a condition of the suspension. Springs v. State , 2017 Ark. App. 364, 525 S.W.3d 490. The State has the burden of proof by the preponderance of the evidence but need only prove one violation. Upshaw v. State , 2013 Ark. App. 41, 2013 WL 362697. We will not reverse the trial court's decision unless it is clearly against the preponderance of the evidence. Id.
Janice Gilbreath collects payments and keeps records for the Crawford County prosecutor's office. Ms. Gilbreath has a file for Ahmad for both the 2008 and 2010 cases. With respect to the 2008 case for which Ahmad was ordered to pay $ 800 in restitution, Ms. Gilbreath stated that Ahmad had made some payments in 2009. Ahmad paid $ 50 in January; $ 50 in February; $ 80 in March; $ 50 in June; and $ 75 in September 2009. However, Ahmad had made no payments from 2009 through October 2017 when the State filed its petition to revoke. After the petition to revoke was filed, four $ 25 payments were made in November 2017, December 2017, March 2018, and April 2018. The State introduced a ledger reflecting each of these payments and a balance due of $ 395 for the 2008 case. With respect to the 2010 case, Ms. Gilbreath testified that none of the $ 1492 in court-ordered restitution had been paid. The State introduced a ledger for the 2010 case showing zero payments.
Ahmad testified that, after being paroled in Louisiana, he went back to the same job. He stated that he was working 30 to 35 hours per week making about $ 9 per hour. Ahmad was living with his mother, who was "helping him out a little bit money wise." Ahmad stated that during this time, he paid rent to his mother and also paid the light bill, the cable bill, and his cell-phone bill. Ahmad indicated that he was paying $ 25 to $ 50 for the cable bill.
Ahmad testified that he was incarcerated again in New Orleans in October 2016 for a parole violation. He stated that he was later taken to a Sebastian County detention center in January 2017, then taken to Crawford County detention in June 2017 before being released from there in July 2017.[1] Ahmad stated that after his release, he was trying to get back to New Orleans but had to wait for about eighty days in Fort Smith and "could not do anything because I didn't have the ID at the time."
Ahmad testified that he returned to New Orleans. He stated that he did not go back to work, but instead tried to get into school for the 2017 fall semester. He stated that he "was not able to get a job" during the 2017 fall semester. He was picked up in April 2018 and taken back to Crawford County. Ahmad stated that the four $ 25 payments made between November 2017 and April 2018 were made by his mother. Ahmad testified that he had plans for employment at Rheem.
The State must prove by a preponderance of the evidence that the defendant inexcusably failed to comply with his payment obligation. Ark. Code Ann. § 16-93-308(d) (Supp. 2017). Once the State has introduced evidence of nonpayment, the burden of going forward shifts to the defendant to offer some reasonable excuse for his failure to pay. Reese v. State , 26 Ark. App. 42, 759 S.W.2d 576 (1988). The defendant cannot sit back and rely totally upon the trial court to make inquiry into his excuse for nonpayment. Hanna v. State , 2009 Ark. App. 809, 372 S.W.3d 375. Nor must the State negate every possible excuse for nonpayment-an impossible task-in its case-in-chief. Id. The probationer must explain his failure to pay. Id. If he asserts an inability to pay, then the State must carry its ultimate burden of demonstrating no good-faith effort by a preponderance of the evidence. Id.
In determining whether to revoke a suspension for a failure to pay restitution, the trial court shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the failure to pay, and any other special circumstances *59 that may have a bearing on the defendant's ability to pay. Ark. Code Ann. § 5-4-205(f)(3)(A) -(E) (Supp. 2017). In Hanna , we explained:
The State can carry its burden in many ways. It can undermine the probationer's credibility, which is a matter for the circuit court to judge. The State can show a lack of effort. A defendant's failure to make bona fide efforts to seek employment or to borrow money to pay restitution may justify imprisonment. The State can show that the probationer is spending his money on something nonessential or illegal instead of paying restitution.
Ahmad testified that he was incarcerated and unemployed during much of his suspended sentences. However, Ahmad clearly had the ability to work, as he was employed during 2009 and earned his GED during his subsequent incarceration. Indeed, when Ahmad was released from his incarceration, he acknowledged having near full-time employment, and yet he made no payments during that time. Ahmad was, however, able to make payments for a cell phone and cable television. After returning to incarceration and being released a second time, Ahmad failed to secure any employment during the several months leading up to the revocation proceedings. Ahmad stated that during this time frame, he attempted unsuccessfully to enroll in school.
The trial court considered Ahmad's employment status, earning ability, financial resources, and willfulness. In light of the deference we afford to the superior opportunity of the trial court to determine the credibility of a witness's testimony and the weight of the evidence, see Bohlman v. State , 2013 Ark. App. 162, 2013 WL 841332, we cannot say that the trial court clearly erred in finding that Ahmad inexcusably failed to comply with a condition of his suspended sentences.
Affirmed.
The Crawford County detention was evidently related to a prior revocation petition previously withdrawn by the State.