Cite as 2019 Ark. App. 580

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-19-409

| | |
|---|---|
| JANET YOUNG<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** December 11, 2019<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17CR-04-141]<br><br>HONORABLE MICHAEL MEDLOCK, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Chief Judge**

Appellant Janet Young appeals the Crawford County Circuit Court's order revoking her probation and sentencing her to two years' imprisonment followed by eight years' suspended imposition of sentence (SIS) on two counts of fraudulent use of a credit card and ten years' suspended imposition of sentence for twelve counts of second-degree forgery. She argues that the circuit court erred in revoking her probation based on her being disabled and her inability to pay. We affirm.

On December 20, 2004, appellant pleaded nolo contendere to two counts of fraudulent use of a credit card and twelve counts of second-degree forgery. The circuit court sentenced her to ten years' SIS for each offense, subject to terms and conditions, which included that she pay $54,052.66 in restitution. The court ordered the restitution to be paid in installments, with $10,000 due on the plea date and the remaining balance to be paid at

the rate of $175 per month beginning January 15, 2005. The payments were to be made to the Crawford County Prosecuting Attorney's Office.

The State filed a petition to revoke appellant's suspended sentences on February 20, 2008, alleging that she had failed to make payments since September 17, 2007, in violation of the terms and conditions of her suspended sentences. The petition alleged that the balance due on January 19 was $38,277.66. On August 24, 2008, the court entered an order granting the State's motion to withdraw the petition based on appellant resuming payments as ordered.

The State filed a second petition to revoke on August 13, 2012, alleging nonpayment since January 24, 2012, with a remaining balance due of $31,267.66. A revocation hearing was held on July 16, 2015. The circuit court revoked appellant's suspended sentences and sentenced her to ten years' probation subject to terms and conditions, including her continued monthly restitution payments of $175 to begin on August 3, 2015. The sentencing order entered July 29, 2015, provided that the restitution due after appellant paid $2100 in court was $27,067.66. The terms and conditions required that she pay a $35 probation fee monthly beginning on August 1, 2015.

A third revocation petition was filed by the State on October 7, 2015. The State alleged that appellant was in violation of the terms and conditions of her probation because she had failed to make any payments toward her restitution or fees since August 14, 2015,

leaving an unpaid restitution balance of $26,882.66. Appellant was not served with the petition until July 5, 2018, and the revocation hearing took place on January 18, 2019.[1]

Catherine Smith of the Crawford County Prosecutor's Office testified about appellant's restitution payment records. Smith stated that in 2017, appellant made six payments, each less than the $175 required payment, totaling $480. In 2018, appellant made five payments totaling $865—three for $175, one for $220, and one for $120. According to Smith, appellant had made one payment in 2019 at the time of the January hearing.

Smith testified about a note in appellant's record indicating appellant called the office on September 11, 2017, at which time appellant was informed that she was $7,480.66 behind in her payments. She testified that the note also stated that appellant was told by her attorney that she did not have to "pay all of it."[2] Smith said that after September 11, appellant did not make a payment until March 2018. On cross-examination, Smith said that since the 2015 petition to revoke was filed, appellant had made twenty-six payments.

The State rested after Smith's testimony, and appellant testified in her defense. She explained that she was receiving disability payments of $845 in 2018, which had increased to $869 in 2019. She said she had monthly bills, including $395 rent for her one-bedroom apartment, $20 to $30 for electricity, $25 for a prepaid phone, approximately $50 for

---

[1]After appellant was served with the petition, her attorney filed a motion for mental examination and notice of intent to rely on the defense of mental disease or defect. The circuit court ordered fitness-to-proceed and criminal-responsibility examinations on August 3, 2018. The reports of the forensic psychologist indicated that appellant was fit to proceed and that she had the capacity to appreciate the criminality of her conduct and conform her conduct to the requirements of the law.

[2]The note indicated that her attorney told her she could make partial payments and that her son was supposed to be making her payments.

prescriptions not covered by Medicare and Medicaid, approximately $75 for groceries, $75 for cable, and $175 for restitution payments. When asked whether she was able to make the restitution payment, appellant said, "It's hard. I don't have anything left, but I've been making it."

On cross-examination, appellant testified that she was not aware that she was $9000 behind on restitution and admitted that it "shocked" her because she had been making her payments. She explained some payments were for lower amounts because her lawyer told her to "pay what you can." She said she was not trying to do "anything wrong" or "cheat anybody." Appellant seemed to be unaware that after making the September 2017 call to the prosecutor's office—where she informed them that her lawyer told her she did not have to pay the full amount—she did not make any payments for the next five months. She said there was no reason she would not have been making payments. Appellant admitted that she had been arrested three times for failing to make payments, and on some of these occasions, she was able to come up with money, including $2000 in 2008 and $4500 in 2015. On redirect, appellant testified that her son made the $2000 payment, a friend made a $2500 bond payment, and another friend she described as a "second mother" made the $4500 payment. She further testified that her sons and her friends paid her $1000 cash bond when she was arrested on the current petition to revoke.

At the conclusion of the hearing, the circuit court found that appellant had violated the terms and conditions of her probation. The prosecutor made a sentencing recommendation, and defense counsel responded that appellant was "not willfully not making payments" and was "making everything she can based on the amount of money that

4

she has coming in and the bills that she has to pay." The circuit court deferred sentencing for thirty days to see if she could "do something else by then."

At the sentencing hearing, the prosecutor recommended that appellant forfeit the $1000 cash bond, serve two years at a regional correctional facility with an additional eight years suspended on the "C felony," and ten years suspended on the "other C felonies," with restitution of $24,417.66. The circuit court accepted the recommendation, and the sentencing order was filed February 26, 2019, from which appellant timely appealed.

The State must prove by a preponderance of the evidence that a defendant inexcusably failed to comply with a condition of his or her probation. Ark. Code Ann. § 16-93-308(d) (Supp. 2017). A circuit court's decision to revoke probation will be upheld on appeal unless the decision is clearly against the preponderance of the evidence. *Bohannon v. State*, 2014 Ark. App. 434, 439 S.W.3d 735. When the alleged violation involves the failure to pay court-ordered restitution, after the State has introduced evidence of nonpayment, the burden shifts to the defendant to provide a reasonable excuse for his or her failure to pay. *Id.* It is the defendant's obligation to justify his or her failure to pay, and this shifting of the burden of production provides an opportunity to explain the reasons for nonpayment. *Id.* If he or she asserts an inability to pay, then the State must demonstrate that the probationer did not make a good-faith effort to pay. *Williams v. State*, 2019 Ark. App. 437, at 3, 586 S.W.3d 208, 210. Ultimately, the State has the burden of proving that the defendant's failure to pay was inexcusable. *Id.*

Arkansas Code Annotated section 5-4-205(f)(3) provides that in determining whether to revoke based on failure to pay, the court must consider the defendant's

employment status, earning ability, financial resources, the willfulness of the failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay. Ark. Code Ann. § 5-4-205(f)(3)(A)–(E) (Supp. 2017). While the statute governing revocations requires the circuit court's consideration of certain factors in determining whether a party's inability to pay is inexcusable, the statute does not require explicit findings of fact on those factors. *Springs v. State*, 2017 Ark. App. 364, at 5, 525 S.W.3d 490, 493. In *Hanna v. State*, 2009 Ark. App. 809, at 6, 372 S.W.3d 375, 379, we explained that the State can carry its burden of proving willful nonpayment in several ways: (1) by undermining the probationer's credibility; (2) by showing the probationer's lack of effort; (3) by showing that a probationer failed to make a bona fide effort to seek employment or borrow money; or (4) by showing that the probationer is spending money on something nonessential or illegal instead of paying restitution. *See also Williams*, *supra*; *Joseph v. State*, 2019 Ark. App. 276, at 5, 577 S.W.3d 55, 59.

Appellant contends that the circuit court erred in revoking her probation based on her being disabled and her inability to pay. We disagree. Catherine Smith testified that appellant made six payments in 2017 totaling $485 and five payments in 2018 totaling $865. She stated that if appellant made each $175 monthly installment, the total payments per year would equal $2100. In response to the State's proof of nonpayment, appellant testified that she was on disability and received $845 per month in 2018, which increased to $869 in 2019. Appellant's testimony of her expenses included the $175 restitution payment. Her expenses did not exceed her disability income, although it was close, and notably included cable television, which is a nonessential item. When questioned by the State, appellant was

surprised to learn that she was about $9000 behind on her payments and did not understand she had missed several payments after making the September 2017 phone call to the prosecutor's office. In addition, appellant testified that there were several lump-sum payments made when she had been arrested previously for nonpayment, which were paid by friends and family.

Here, the State carried its burden of showing that appellant's nonpayment was willful based on the testimony and evidence before the circuit court. When considering the lower burden of proof in revocation proceedings and giving the proper deference to the superior position of the circuit court to determine questions of credibility and the weight of the evidence, *see Bohannon*, *supra*, we cannot say that the circuit court's decision to revoke her probation was clearly against the preponderance of the evidence.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Tyson K. Spradlin*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.