Robert Shannon FOSTER *v.* STATE of Arkansas

CA CR 08-421                                              289 S.W.3d 476

Court of Appeals of Arkansas
Opinion delivered December 3, 2008

*Charles E. Smith*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Irvin*, Ass't Att'y Gen., for appellee.

J OHN B. ROBBINS, Judge. Appellant Robert Shannon Foster was convicted of theft by receiving on October 3, 2007, and was given a five-year suspended imposition of sentence. On October 30, 2007, the State filed a petition to revoke on the basis that Mr. Foster committed a new offense, an aggravated assault upon an employee of a correctional facility. Arkansas Code Annotated section 5-13-211 (Repl. 2006) provides:

> A person commits aggravated assault upon an employee of a correctional facility if, under circumstances manifesting extreme indifference to the personal hygiene of the employee of the correctional facility, the person purposely engages in conduct that creates a potential danger of infection to an employee of any state or local correctional facility while the employee of the state or local correctional facility is engaged in the course of his or her employment by causing the employee of the state or local correctional facility to come into contact with saliva, blood, urine, feces, seminal fluid, or other bodily fluid by throwing, tossing, or expelling the fluid or material.

After a revocation hearing, the trial court revoked appellant's suspended imposition of sentence and sentenced him to three years in prison followed by a seven-year suspended imposition of sentence. Mr. Foster now appeals, arguing that the trial court erroneously found that he violated a condition of his suspended sentence because the State failed to prove that he committed aggravated assault upon an employee of a correctional facility. We affirm.

To revoke a probation or suspension, the trial court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of that probation or suspension.

*Peterson v. State*, 81 Ark. App. 226, 100 S.W.3d 66 (2003). On appeal, the trial court's findings will be upheld unless they are clearly against the preponderance of the evidence. *Lamb v. State*, 74 Ark. App. 245, 45 S.W.3d 869 (2001). Evidence that is insufficient for a criminal conviction may be sufficient for the revocation of probation or suspended sentence. *Id.* Since the determination of a preponderance of the evidence turns on questions of credibility and the weight to be given testimony, we defer to the trial court's superior position. *Id.*

Deputy John Hicks testified for the State at the revocation hearing. He stated that on October 22, 2007, he was working at the Sebastian County Detention Center, where Mr. Foster was being detained. Deputy Hicks testified:

> I did come into contact with Robert Foster. I entered his cell and searched for items that he was not allowed to have. I handed him a sufficient amount of toilet paper so that he could use that. He leaned directly towards my hand and he spit at the toilet paper and my arm. Spit did get on me; it struck me on my left arm right by the wrist. He stood up and told me that it was a piece of cookie.

Deputy Hicks stated that the substance on his arm appeared to be brown phlegm. He indicated that Mr. Foster had been upset at both him and Deputy Nate Underwood since being fired from the kitchen. Deputy Hicks did not know whether or not Mr. Foster had any kind of infection.

Deputy Underwood was present when the alleged incident occurred. He testified that Deputy Hicks handed a large amount of toilet paper to Mr. Foster. Deputy Underwood further stated that Mr. Foster "looked at him and leaned in and spit directly on the toilet paper and his arm." Deputy Underwood indicated that Mr. Foster was mad at him and had filed grievances against him and several other deputies. He further testified that appellant became upset that day because of the items that he and Deputy Hicks had removed from appellant's cell.

Mr. Foster testified on his own behalf, and he stated that he was never released from jail after receiving his suspended sentence because he was "sitting out fines." He acknowledged that, "I had a piece of cookie or something off my mouth and hit his arm." However, Mr. Foster indicated that he was trying to spit on the toilet paper and not on Deputy Hicks. Mr. Foster explained:

I walked back to the end of the cell and Hicks told me, "Hey, look, you spit on my arm." I walked back to the front of the cell and I said, "I didn't spit on you." I said, "That's cookie, Hicks." I told him I didn't spit on him. Obviously he thought I did. If there was any saliva that got on him, I did not intend for it to be there. I don't spit on people.

Mr. Foster stated that he had no reason to be mad at the deputies. He did admit that he had been mad at a few people before, and stated, "I will hit somebody, I will kick them, I will ram them up against the wall, but I will not spit on nobody."

The following exchange occurred during the State's cross-examination of Mr. Foster:

Q: So, you made it quite obvious that you were upset with Deputies Hicks and Underwood before this whole incident with the spitting, is that right?

A: Yes, sir.

Q: And then they come into your room, they took your stuff out and then Deputy Hicks is handing you some toilet paper and then you spit on him, right?

A: Yes, sir.

Q: When somebody hands you something, is that what you always do is spit on them? Why on earth would you do that? Why didn't you spit on the toilet paper?

A: Because at the time I didn't want nothing from Hicks.

Q: You were mad?

A: Oh, I was pretty upset.

Q: So, you spit out of anger and he had this toilet paper in his hand, right? Yes or no, you spit out of anger?

A: Yes, sir.

Mr. Foster testified that he thought that his spit only hit the toilet paper, and maintained that the piece of cookie that hit Deputy Hicks was a result of appellant's throwing his sack lunch against the wall.

On appeal, Mr. Foster argues that the State failed to prove by a preponderance of the evidence that he committed aggravated assault upon an employee of a correctional facility. Mr. Foster makes a two-prong argument. First, appellant contends that the State failed in its proof because no evidence was introduced to show that he suffered from any infection, and the offense requires a danger of infection as one of the elements. Next, Mr. Foster argues that there was insufficient evidence of his purposeful intent or manifestation of extreme indifference to the personal hygiene of Deputy Hicks because he tried to spit onto toilet tissue held by Deputy Hicks, and not on Deputy Hicks himself. Mr. Foster submits that the State's proof only showed an accidental spitting resulting in a small amount of saliva or cookie crumb to fall onto the deputy's arm. Appellant argues that this proof was insufficient to demonstrate a violation of Ark. Code Ann. § 5-13-211 (Repl. 2006), and thus that the revocation of his suspended sentence must be reversed.

■ We hold that the trial court's decision to revoke appellant's probation was not clearly against the preponderance of the evidence. The testimony of the deputies indicated that Mr. Foster was angry and spit in the direction of Deputy Hicks's arm, resulting in brown phlegm coming in contact with Deputy Hicks's skin. Mr. Foster's own testimony at times contradicted itself, but on cross-examination he agreed that he was upset at the time and that he spit out of anger. The testimony showed that Deputy Hicks was trying to hand appellant some toilet paper and that appellant spat in the direction of the toilet paper and the deputy's arm. Because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his acts. *Watson v. State,* 358 Ark. 212, 188 S.W.3d 921 (2004). While Mr. Foster claims it was an accident, there was ample evidence that he purposely spat on Deputy Hicks, resulting in his saliva coming in contact with the deputy under circumstances manifesting an extreme indifference to the deputy's personal hygiene.

■ While Mr. Foster also argues that there was no evidence that he suffered from any infection at the time of his conduct, this argument is misplaced. The requirement of the statute is that the person's conduct "creates a *potential* danger of infection" to the correctional-facility employee. Mr. Foster's act

of purposely expelling his bodily fluid onto the deputy's person satisfied the "potential danger" requirement of the offense.

Affirmed.

GLOVER and HEFFLEY, JJ., agree.