2009 Ark. App. 876
**Anthony OWENS, Appellant**
v.
**STATE of Arkansas, Appellee.**
**No. CA CR 09–616.**
Court of Appeals of Arkansas.
Dec. 16, 2009.

Daniel Stewart, Fort Smith, for appellant.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellee.

WAYMOND M. BROWN, Judge.

Appellant Anthony Owens appeals the revocation of his suspended imposition of sentence (SIS) on three underlying cases (forgery in the second degree in case CR–2004–379; overdraft in case CR–2004–1471; conspiracy to possess cocaine with intent to deliver (reduced) and possession of drug paraphernalia in case CR–2007–79(b)). Appellant was sentenced to ten years' imprisonment for the underlying charges and received an additional twelve-year SIS in case CR–2007–79(b). Appellant argues on appeal that the trial court erred in finding that he failed to provide support and failed to pay restitution without just cause. We find no error and affirm.

The State filed a petition to revoke appellant's SIS in the underlying cases on December 3, 2008, alleging that appellant had violated the terms and conditions of his suspended sentence by failing to pay restitution as ordered. At the time of the

petition, appellant owed $991.20 in restitution. The petition also alleged that appellant had charges pending in Sebastian County for failing to pay his court-ordered child support.

Appellant's revocation hearing took place on February 25, 2009. Anita Elaine Welch, appellant's child's mother, testified that the last time she received a child support payment from appellant was in November or December 2008, when appellant was released from jail. She stated that "the payment prior to the one in late 2008 was made years ago; and [she] don't remember when it was." According to Welch, appellant told her to "keep them people out of [his] business." She stated that she has known appellant to have a job and he still would not pay child support. Welch testified that, as of December 2008, appellant was almost $26,000 in arrears.

Deborah Cooksey Avillion, an attorney specialist with the Office of Child Support Enforcement in Van Buren, testified that appellant's child-support arrearage through February 2009 was $26,790. She stated that, since February 5, 2003, she has had seven hearings and several conversations with appellant. Avillion said that she was in court with appellant on April 26, 2006, following appellant's arrest for nonpayment of child support. According to Avillion, appellant was released after he told the court he had a $4964 check at his house and was going to apply it to his child-support arrearages. However, the money was never received. Avillion also testified that in September 2005 appellant was released on a $520 bond, the amount found on his person, subsequent to being arrested for nonpayment of child support. Avillion stated that appellant claimed disability at various times but never provided them with a doctor's statement that he was disabled and unable to work. She testified that appellant appeared at a review hearing on December 12, 2008, in a business suit, possessing business cards, and indicating that he was working and would pay $150 by December 12; however, he only made a fifty-dollar payment on December 9. Avillion stated that appellant told her office that he was filing a workers' compensation claim, but they were never able to intercept any money from the claim. According to Avillion, the workers' compensation claim with Rheem Air Conditioning was closed on August 15, 2002, and no active claim was on file. She conceded that "there was at least some notice to the Office of Child Support Enforcement of at least the [appellant's] claim to injury; the back surgery, the Worker's [sic] Comp, and that he had applied for Social Security." However, she stated that appellant had never shown her an application for SSI disability or provided her with proof of any application of rehabilitation services. She stated that the medical records appellant did provide her with "would actually prove that he was able to work."

The Office of Child Support Enforcement's activity log was introduced without objection during Avillion's testimony. The restitution ledger was introduced without objection at the conclusion of the State's case. The ledger showed that appellant owed $991.20 in restitution at the time of his revocation hearing.

David Lee Jones, a retired minister, testified that he had known appellant for twelve years. According to Jones, he and appellant were in the Brother's Keeper program together. Jones testified that appellant had a seasonal job, keeping up yards. Jones stated that appellant cleaned his yard and that appellant had done work for other people Jones knew. Jones said that he did not think that appellant had the ability to do a lot of physical labor because of his back injury. Jones also

stated, "It seems a little inconsistent that he would have a back injury and not be able to do much physical work and yet operate a lawn care business, but he had other people working for him." Jones testified that appellant had made a considerable amount of changes since he had been released from prison the last time.

Appellant testified that he has had two back surgeries and was presently in need of a third surgery. According to appellant, he had a work-related injury in 2003 and had to have surgery on his mid-back. Appellant stated that he returned to work following his surgery, but was soon fired. Appellant testified that he was performing his work "all right after [his] surgery." He also stated that he was "always going to have pain in [his] back." Appellant said that his work history ceased after his termination from Rheem. Appellant further testified,

> I needed to have surgery again on my back so I filed for disability and I didn't work until I got out of prison because I was waiting on a claim from Social Security. I've been waiting since 2002, 2003, when I first filed a claim for disability and every time that I go to jail, they stop it and then I have to wait and apply again. I developed the lawn care business to keep some cash coming so that I could help Tim and Nita and myself as far as medicine and trying to see the doctor. I have not got the second surgery I needed on my mid-back.... I do as much of the lawn care business as I can then I got a guy who works for me.... They help me out when it comes to the hard labor part of the work. I just go out and contract the work and they come and do the work.

Appellant stated that he had contracts for five yards from January 15, 2008, to the time of the hearing, for twenty to thirty dollars a yard. However, he stated that he did not do all the yards each week—he had help. According to appellant, he paid his help ten dollars a yard, and he kept twenty dollars. Appellant testified that he was doing his lawn business in 2005, whenever he could get lawns. According to appellant, in 2005 he lived with his mother and she supported him; he was also on food stamps. Appellant stated that he made between $2000 and $3000 in 2006 because business was slow and that "[t]hey kept putting [him] in jail." Appellant said that he was in jail from April 22, 2006, to June 28, 2006. Appellant was also imprisoned from January 16, 2007, to January 15, 2008, on a matter unrelated to this case. Appellant testified that there were occasions when he would give money directly to his child. He also stated that he would buy his child clothes and shoes every year. According to appellant, he spent $400 to $500 on his child yearly. Appellant testified, "I haven't been doing what I should have been doing or what I could have done. I would ask you to have mercy on me so I can be the father to the son I've never had."

On cross, appellant stated that he never paid child support at the Office of Child Support. He also conceded that buying his child clothes once a year "is not supporting a child." Appellant excused his behavior by stating that he had doubts about the child being his because Welch had different boyfriends. Appellant stated that he paid all of his probation fees to stay out of jail; however, he insisted that he was not more concerned with staying out of jail than with his child having food to eat. Appellant testified that he contracts lawns and his helper does all the work. He stated that his helper has stayed with him for years under this arrangement. Appellant said he does what physical labor he can with his back problems. When asked whether he could work at McDonald's, appellant replied, "I

could work at McDonald's but they probably wouldn't hire me because of my record." He further indicated that the long standing and moving around would probably prevent him from holding down a job at McDonald's because his left leg gets numb. According to appellant, he would rather be using his mind.

The trial court found that appellant had, without just cause, failed to provide support to his minor child. The trial court gave little weight to appellant's testimony, stating that it was "despicable." The trial court told appellant that if he is "physically capable of doing lawn care, [he is] physically capable of finding some employment that exists in the workplace." The trial court found appellant in violation of his suspended sentence and sentenced him to ten years' imprisonment. Appellant also received an additional twelve years' SIS. This appeal followed.

 A trial court may revoke a defendant's suspension at any time prior to the expiration of the period of suspension if it finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his suspension. Ark.Code Ann. § 5–4–309(d) (Supp. 2009); *Reese v. State*, 26 Ark.App. 42, 759 S.W.2d 576 (1988). This court will not reverse the trial court's decision to revoke unless it is clearly against the preponderance of the evidence. *Williams v. State*, 351 Ark. 229, 91 S.W.3d 68 (2002). Because the determination of a preponderance of the evidence turns on questions of credibility and the weight to be given testimony, we defer to the trial judge's superior position. *Richardson v. State*, 85 Ark. App. 347, 157 S.W.3d 536 (2004). The State need only show that the appellant committed one violation in order to sustain a revocation. *Id.*

 Where the alleged violation is a failure to make payments as ordered, the State has the burden of proving by a preponderance of the evidence that the failure to pay was inexcusable. *Reese, supra.* Once the State has introduced evidence of nonpayment, the burden shifts to the defendant to offer some reasonable excuse for his failure to pay. *Id.* Arkansas Code Annotated section 5–4–205(f)(3) (Supp. 2009) sets forth several factors to be considered by the trial court, including the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay. Although a probationer cannot be imprisoned solely on the basis of failure to pay, his failure to seek employment or make bona fide efforts to borrow money to pay may support a finding that his failure to pay was a willful act warranting imprisonment. *See Jordan v. State*, 327 Ark. 117, 939 S.W.2d 255 (1997); *Gossett v. State*, 87 Ark.App. 317, 191 S.W.3d 548 (2004).

Appellant argues that the trial court erred by finding that he had violated the terms and conditions of his suspended sentence without just cause. According to appellant, he has just cause for his failure to pay: he does not have the ability to pay. This argument is without merit.

██ The testimony adduced at the revocation hearing showed that appellant was over $26,000 behind in child support. Appellant operated a lawn-care business, but still failed to make payments toward his child-support obligation. Following a body attachment, $520 was paid toward appellant's arrearage. In addition to the $520, appellant paid approximately seventy dollars in child support. Appellant admitted to the trial court that he knew that he did not do what he could. While appellant offered excuses for his violations, the trial judge was not required to believe him or

excuse his failure to comply with the conditions of his suspended sentence. *See, e.g., Jones v. State,* 52 Ark.App. 179, 916 S.W.2d 766 (1996). In fact, the trial court gave very little weight to appellant's explanations, stating that it did not believe much of what appellant had said and finding his testimony "despicable." We defer to the fact-finder on issues of credibility. *McChristian v. State,* 70 Ark.App. 514, 20 S.W.3d 461 (2000). Additionally, appellant's failure to seek employment, stating that he would rather work with his mind, supports the trial court's finding that his failure to pay was willful. Therefore, we affirm.

Affirmed.

HENRY and BAKER, JJ., agree.