2010 Ark. App. 730

**Joey RHOADES, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–433.**

Court of Appeals of Arkansas.

Nov. 3, 2010.

J. Brent Standridge, Benton, for appellant.

Dustin McDaniel, Atty. Gen., Brad Newman, Asst. Atty. Gen., for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Joey Rhoades appeals the revocation of his suspended imposition of sentence by the Saline County Circuit Court. He argues that the circuit court erred (1) in determining that he violated the conditions of his suspended imposition of sentence, and (2) in denying his motion to obtain a DNA sample. We affirm.

*Facts*

On June 18, 2007, appellant pleaded guilty to one count of criminal nonsupport, a class C felony, and received a suspended imposition of sentence for a term of 120 months. The conditions of suspended sentence provided, in part, that appellant was to pay a total of $21,731.72 in back child support beginning August 18, 2007, at a rate of $182.00 monthly, and that being more than sixty days past due, in any amount, on any of his payments would be a violation of the conditions. Appellant signed the conditions, acknowledged that he had read them and understood them, and averred that he was "financially and physically able" to make the payments.

On November 8, 2007, the State filed a petition to revoke the suspended imposition of sentence contending that appellant had violated the conditions by being more than sixty days delinquent on his child-support payments. Prior to the revocation hearing, appellant filed a motion to obtain a DNA sample at public expense, which the State opposed.

A revocation hearing was held on January 7, 2010, at which time the circuit court also heard evidence regarding appellant's motion to obtain DNA testing. With respect to the revocation hearing, the State's proof, in part, consisted of the testimony from Terry Dailey, an employee of the Office of Child Support Enforcement (OCSE), who testified that appellant had fallen behind $1,080.00 on his current obligations and had not paid any amount of child support toward the arrearage. Among the exhibits introduced at the hearing was a default judgment of paternity, which had been entered against appellant in August 1995, and summaries of his payment history.

Appellant's case-in-chief consisted of his testimony, wherein he explained that when he was placed on his suspended im-

position of sentence he lost his job and could not obtain employment. Appellant contended that the State failed to show that he inexcusably failed to comply with the conditions of his suspended imposition of sentence, but the circuit court denied appellant's motion.

The circuit court denied appellant's motion regarding the DNA sample, revoked his suspended imposition of sentence, and sentenced appellant to a term of seventy-two months' imprisonment.

## I. *Violation of the Conditions of Suspended Imposition of Sentence*

This court will uphold a circuit court's finding in a revocation proceeding unless it is clearly against the preponderance of the evidence. *Nelson v. State,* 2010 Ark. App. 549, 2010 WL 2612672. Because the determination of a preponderance of the evidence largely turns on credibility and weight to be given to testimony, this court defers to a trial court's superior position in making credibility determinations. *Id.* A circuit court must find by a preponderance of the evidence that a defendant inexcusably violated but one of the conditions of his suspension or probation to justify a revocation. *Id.* Evidence that is insufficient for a criminal conviction may be sufficient to support a revocation. *Foster v. State,* 104 Ark.App. 108, 289 S.W.3d 476 (2008).

The circuit court may revoke probation if the defendant has not made a good-faith effort to make his payments. *Thompson v. State,* 2009 Ark.App. 620, 2009 WL 3153210. While the State has the burden of proving that the failure to pay is inexcusable, once the State has introduced evidence of nonpayment, the burden of going forward shifts to the defendant to offer some reasonable excuse for his failure to pay. *Id.* The circuit court is not required to believe the testimony of

the defendant because he is the person most interested in the outcome of the hearing. *Brown v. State,* 2009 Ark. App. 873, 2009 WL 4844677.

While acknowledging that he was behind in his payments at the time the petition to revoke was filed, appellant submits that his conduct was excusable because he was basically unemployed when he was released from jail and placed on suspended imposition of sentence. He claims that he had the full term of his suspended imposition of sentence in which to pay all of the child-support arrearage; yet the State sought revocation, just a short time after he was released from jail, primarily because he was indigent. Appellant cites *Burkhart v. State,* 2010 Ark. App. 462, 2010 WL 2195755, for the proposition that legal authority forbids revocations based upon a person's status as an indigent. Appellant submits that the circuit court erred in revoking his suspended imposition of sentence, inasmuch as the State failed to demonstrate that the failure to pay the child support was inexcusable.

We disagree. The State introduced a default judgment of paternity entered on August 28, 1995, which, among other things, outlined appellant's obligation to financially support the child. The State also introduced a 1996 order that modified the requirements of the paternity judgment and found that appellant was in arrears on his child-support payments. The order declared appellant to be in contempt for failing to pay his child support and provided for a five-day suspended sentence conditioned upon appellant making his payments as ordered.

Mr. Dailey of the OCSE testified that, in addition to the monthly payment of $182.00 toward the arrearage of $21,731.62, appellant also was to pay $45.00 each week for his current support obligation. Appellant made no payments between June 28, 2000,

and the referral to the prosecutor in 2007, and subsequently made no payments between June 18, 2007, when he entered his guilty plea, and November 8, 2007, when the revocation petition was filed. Mr. Dailey sent appellant a letter on September 10, 2007, informing him of the nonpayment and reminding him what he owed. The letter, however, was returned, with notations saying it was not deliverable as addressed and "unable to forward." It is undisputed that appellant never contacted Mr. Dailey's office to report a change of address or to provide any employment information.

Appellant testified that, despite his signature on the plea conditions, he did not understand that he was to make monthly payments of $182.00 toward the child-support arrearage. Appellant explained that he lost his job when he was incarcerated and could not find a job because both his plumber's license and his driver's license had been suspended. However, he acknowledged that his plumber's license had been suspended two years earlier when a garnishment was placed on his paycheck. Appellant claims that after he was released from jail following his guilty plea, he was without work for approximately a year and was able to find only "odd-men jobs."

On cross-examination, appellant testified that he lived with his uncle between June and November 2007. He explained that his uncle was fully supporting him because appellant did not have a job. Appellant stated that he looked for work but was unable to find a job; however, he acknowledged not applying at places such as Wal–Mart or McDonald's. He admitted that he never contacted the OCSE or his public defender to find out what he needed to do.

The above-referenced evidence supports that appellant had a lengthy history of failing to meet his child-support obligation, going back as far as 1996 when he was held in contempt. Mr. Dailey testified that appellant had not paid any child support since 2000, despite his awareness of his obligation. His failure to pay long predated any employment problems he may have had following his release from jail after the entry of his guilty plea. At the time of his guilty plea to nonsupport in June 2007, appellant again agreed to make the payments as a condition of his suspended sentence, yet he failed to do so.

The circuit court was not required to believe appellant's assertion that he did not understand what he was doing when he signed the conditions of his suspended sentence, particularly since he is the person most interested in the outcome of the proceedings. *Wilson v. State*, 95 Ark. App. 384, 237 S.W.3d 473 (2006). In order for appellant to plead guilty, he was required to appear before the circuit court and admit his guilt after the circuit court explained to him the consequences of pleading guilty and determined the voluntariness of, and factual basis for, the plea. Ark. R.Crim. P. 24.4, 24.5, 24.6 (2010). His purported lack of knowledge and understanding is inconsistent with what he was told and what he admitted during the process of pleading guilty.

Appellant's failure to seek assistance or guidance from the OCSE, his attorney, or his uncle demonstrates the willfulness of his conduct. Because appellant failed to offer a credible excuse to overcome the State's proof that he had failed to make his payments, and because substantial evidence supports the circuit court's revocation order, we affirm on this point.

## II. *Denial of Appellant's Motion to Obtain a DNA Sample*

At the revocation hearing, appellant contended that it was necessary for him to obtain a DNA sample to present a defense to the petition for revocation. Ap-

pellant testified that at the time of conception of the child in question, he had not had sexual intercourse with the child's mother and that the child was conceived some nine months after appellant and the child's mother became separated. He requested a DNA test so that fact could be established scientifically, but the circuit court denied the motion.

It is undisputed that no DNA test previously had been performed on appellant, but a default judgment of paternity was entered against him on August 28, 1995. Additionally, appellant pleaded guilty to the offense of nonsupport on June 18, 2007. In order for him to enter that plea, the circuit court had to ascertain that there was a factual basis for the plea. *See* Ark. R.Crim. P. 24.6. This, in effect, required appellant to admit that the State could prove all of the elements of the offense. Our supreme court has held that a guilty plea is, in itself, an admission of all of the elements of the charges and constitutes a waiver of any defense that might have been raised at the trial of the charges. *See Curtis v. State*, 255 Ark. 428, 500 S.W.2d 767 (1973).

Pursuant to Arkansas Code Annotated section 5–26–401(a)(3) (Supp.2009), to prove the offense of nonsupport, the State had to show that appellant had failed to provide support for his illegitimate child who was less than eighteen years old, and whose parentage had been determined in a previous judicial proceeding. There is no indication that appellant ever |₈appealed from or otherwise contested the August 28, 1995 default judgment of paternity that declared appellant to be the biological father of A.P., who was less than a year old at that time. By pleading guilty to nonsupport in 2007, appellant acknowledged his responsibility for supporting A.P., based on the previous judicial determination that he is her father.

The circuit court noted that, since 1995, appellant has never denied that he is A.P.'s father and ruled that denial of paternity was a defense appellant should have raised before he pleaded guilty to nonsupport. Appellant is attempting, in this revocation proceeding, to challenge the sufficiency of the evidence to support the underlying offense of nonsupport. By pleading guilty, appellant admitted, as an element of that crime, that he is A.P.'s father. We hold that the circuit court was correct in its denial of the motion and affirm on this point.

Affirmed.

PITTMAN and KINARD, JJ., agree.