

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–15–561

| | | |
|---|---|---|
| JIMMY DALE FRAHM | | **Opinion Delivered** February 10, 2016 |
| | APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-13-90] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MICHAEL MEDLOCK, |
| | APPELLEE | JUDGE |
| | | REVERSED |

## M. MICHAEL KINARD, Judge

Appellant Jimmy Dale Frahm appeals from the revocation of his suspended imposition of sentence (SIS). He argues that his failure to comply with the terms of his SIS was not inexcusable. We agree and therefore reverse the revocation.

In 2013, appellant entered a negotiated plea of guilty to a Class B felony charge of nonsupport. He was sentenced to one year of incarceration in a Department of Community Correction Center and nine years' SIS. The conditions of disposition attached to the sentencing order stated that "defendant shall begin making regular child support payments as previously ordered in 17DR-98-184 beginning 60 days after release as a term and condition of suspended sentence."

On June 6, 2014, the State filed a petition to revoke. The State alleged that appellant had been released from incarceration on February 14, 2014, and had failed to make any child-support payments. The revocation hearing was held on April 16, 2015. The State

introduced child-support records showing that appellant owed a total of $64,813.16. Appellant's ex-wife, Ann McMurtry, testified that she had not received any child-support payments since appellant pled guilty in 2013.

The defense called Michael Rich, an investigator for the Office of Child Support Enforcement (OCSE). Rich testified that McMurtry closed her case with OCSE when appellant was incarcerated in 2013. Rich explained that the case then became a "monitoring case," and his office ceased enforcement. Rich said that if someone called OCSE and asked how much was due on a monitoring case, the system would show a zero balance because the account was closed out. He said that if someone wanted to make a payment on such a case the secretaries were supposed to say, "You can pay if you wish, but we're not enforcing it."

Rich said that on April 17, 2014, appellant had called the child-support office, updated his information, and asked what was going on with his case. Rich said that appellant's wife or girlfriend later informed him that the secretary had told appellant the case was closed and that he had a zero balance. The secretary was no longer working at OCSE, but Rich agreed that the system would have shown that no payments were due when appellant called.

Appellant testified that when he pled guilty in 2013 his attorney told him to notify the child-support office within sixty days of his release. He said that when he called OCSE he was told there was a zero balance and the case was closed out. He said that the employee became upset with him because he "kept asking her over and over if it was a zero balance." Appellant said that the employee did not tell him he needed to do anything.

Appellant said that when he was released from incarceration he lived in a shed in the backyard of his boss's house. He said that he did a little landscaping and construction for his boss for a couple of months and was paid a "little bit." Appellant said that he was aware of how much he owed each week in child support, and he had saved money to try to make payments. He currently had $70 saved. On cross-examination, appellant testified that he had never checked with an attorney and had never called the circuit clerk about his child-support obligation. He acknowledged that it had been a long time since he last made a payment.

The trial court found that appellant had violated the terms and conditions of his SIS due to nonpayment. The court found that OCSE was merely a collecting agency and that appellant's obligation did not "go away" when OCSE quit collecting. Appellant was sentenced to nine years' imprisonment and ten years' SIS and ordered to pay $64,813.16 in restitution to OCSE.

This court will uphold a circuit court's finding in a revocation proceeding unless it is clearly against the preponderance of the evidence. *Rhoades v. State*, 2010 Ark. App. 730, 379 S.W.3d 659. Because the determination of a preponderance of the evidence largely turns on credibility and weight to be given to testimony, this court defers to a trial court's superior position in making credibility determinations. *Id*. A circuit court must find by a preponderance of the evidence that a defendant inexcusably violated one of the conditions of his suspension or probation to justify a revocation. *Id*.

When the alleged violation is that the defendant failed to pay restitution or some other financial obligation, the State has the burden of proving that the defendant's failure to pay

Cite as 2016 Ark. App. 85

was inexcusable. *Holcombe v. State*, 2011 Ark. App. 355. Once the State introduces evidence of nonpayment, it is then up to the defendant to provide some reasonable excuse for his nonpayment, though the ultimate burden of proving that the defendant's failure to pay was inexcusable always remains with the State. *Id*. Arkansas Code Annotated section 5-4-205(f)(3) (Supp. 2015) sets forth several factors to be considered by the trial court, including the defendant's employment status, earning ability, and financial resources; the willfulness of the defendant's failure to pay; and any other special circumstances that may have a bearing on the defendant's ability to pay. *Owens v. State*, 2009 Ark. App. 876, 372 S.W.3d 415.

Appellant contends that his failure to pay was not inexcusable because he was willing to pay but OCSE told him that he owed nothing. We find this case to be analogous to *Barbee v. State*, 346 Ark. 185, 56 S.W.3d 370 (2001). *Barbee* involved a defendant whose driver's license was revoked for three years as a condition of his probation. Barbee was caught driving, and the State sought to revoke his probation. Barbee testified that during the period of his probation he had attempted to obtain an identification card from the revenue office, but the revenue-office employee informed him that his driving privileges were not suspended and that he could only get a driver's license. Barbee asked for his record to be checked again to be sure. The revenue-office employee testified that she had no choice but to issue a driver's license, instead of an identification card, based on the information in the computer.

Noting the unique facts of the case, the supreme court reversed the revocation.

The court noted that it was "the State" that incorrectly gave Barbee a driver's license when he was only attempting to obtain an identification card. The court held that Barbee's reliance on the State revenue office that he was allowed to have a driver's license surely constituted forgivable, pardonable, and excusable behavior.

Here, appellant was told to make payments to OCSE upon his release. OCSE records showed that he called the office, updated his information, and inquired about his case. He was told he had a zero balance and the case was closed even after asking that the records be checked again. Although OCSE, like the revenue office, does not have authority over the conditions of appellant's SIS, appellant attempted to comply with his SIS and essentially relied on "the State." As in *Barbee*, we hold that appellant's reliance on the State in this situation was excusable. Accordingly, we reverse the revocation. Appellant's obligation to pay child support as ordered in the 2013 sentencing order remains undisturbed. *See Hanna v. State*, 2009 Ark. App. 809, 372 S.W.3d 375.

Reversed.

VIRDEN and GLOVER, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Priest*, Ass't Att'y Gen., for appellee.