Cite as 2024 Ark. App. 439

# ARKANSAS COURT OF APPEALS

DIVISION IV

No. CR-23-615

| | |
|---|---|
| SAM TAWFIK | **Opinion Delivered** September 18, 2024 |
| APPELLANT | APPEAL FROM THE IZARD COUNTY CIRCUIT COURT |
| V. | [NO. 33CR-22-10] |
| STATE OF ARKANSAS | HONORABLE TIM WEAVER, JUDGE |
| APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Following a bench trial, appellant Sam Tawfik was convicted of aggravated assault upon an employee of a correctional facility, a Class D felony, in violation of Arkansas Code Annotated section 5-13-211(a)(1).[1]  In a sentencing order filed on May 26, 2023, Tawfik was sentenced to a term of four years' incarceration in the Arkansas Division of Correction.  On appeal, Tawfik argues that the circuit court erred in denying his motion to dismiss because there was insufficient evidence to support the conviction.  We affirm.

Tawfik was charged by information on February 11, 2022, with aggravated assault on a corrections officer.  It was alleged that on January 6, while serving a three-year sentence for a 2021 aggravated assault, Tawfik spit on Corporal Raymond Moore.  A bench trial was held on May 26, 2023.

---

[1](Supp. 2023).

Sergeant Stephen Pool testified that on January 6, he was assigned to the restrictive housing zone and was controlling inmate movement in the hallway. As Tawfik exited into the hallway following his release from restrictive housing, he became "insolent toward staff and stated fuck you dick head" to Corporal Moore. Sergeant Pool stated that Tawfik was then ordered "to the wall." When he refused to comply with the order, Tawfik was pushed to the wall and placed in handcuffs. Sergeant Pool said that Tawfik then threatened to spit on Corporal Moore. To avoid that happening, Tawfik was forced to the floor, placed in leg shackles, carried into isolation, and placed in a shower cell. Sergeant Pool testified that because he was "wrestling with the inmate," he did not witness Tawfik spit on Corporal Moore. He stated that he did see saliva, "a clear foamy substance," on Corporal Moore's arm and pants.

Officer Kenny Morehead testified next. He stated that he heard Tawfik say "fuck you, dick head," and then witnessed him pull away when officers attempted to place him in handcuffs. Officer Morehead testified that once officers had Tawfik restrained and turned back around, Tawfik stated, "I'll fucking spit on you, dick head." Officer Morehead then aided Sergeant Pool and Corporal Moore "put [Tawfik] on the ground and put leg irons on him." He did not see Tawfik spit; however, he did see spit on Corporal Moore's arm, shirt, and pants.

Corporal Moore testified that when Tawfik exited the door of restrictive housing, he looked at him and called him a dick head. Tawfik was ordered to turn around and face the wall and put his hands behind his back to be restrained. Because he did not initially comply, Tawfik was forced into position and restrained. Corporal Moore testified that Tawfik then turned and said he would spit on him. Tawfik was taken to the floor and placed in leg restraints; in the process, he spit on Corporal

2

Moore's right-side arm, shirtsleeve, and pants. Corporal Moore stated that he knew Tawfik intentionally spit on him because he "was looking at his face" and saw the saliva come out of his mouth.

Corporal Moore stated that as soon as Tawfik was restrained, he backed away from the situation. He explained the procedure when an officer is spit on: "We see medical. We talk to the company nurse. We take pictures." He testified that he wiped off the saliva, he put Germ-X on his arms and hands, and photographs were taken by his supervisor. Corporal Moore explained that Tawfik "was in isolation due to a week prior he threatened another officer and threatened to spit on him." On cross, he testified that when Tawfik was taken to the ground, he and several other officers were lying on Tawfik to restrain him. He further testified that he "scrubbed up. And then after the pictures were took, [he] went back to the laundry, and [he] got bleach water and put on [himself]."

At the close of the State's evidence, Tawfik moved to dismiss. In support of his motion, he argued the State failed to prove (1) the "extreme indifference to the personal hygiene of a corrections officer" element; (2) the "potential danger of infection" element; (3) that the substance on Corporal Moore, whether it be saliva or something else, came from Tawfik; and (4) that Tawfik "purposely" spit on the Corporal Moore. The circuit court denied the motion.

Tawfik testified on his own behalf. He admitted that when he was released from "the hole" he said "what's up dick head" to Corporal Moore. He stated that he was then ordered to face the wall and was subsequently taken down to the ground. Tawfik testified that Corporal Moore said he spit on him, to which Tawfik responded, "you lie. I don't spit on you." Tawfik stated, "I called him dick head, yes. But I don't spit on him." On cross, Tawfik acknowledged that, during his incarceration, he had been to "disciplinary court" "maybe more" than five or six times for failure to obey staff orders.

After the defense rested, Tawfik's motion to dismiss was renewed. The circuit court again denied the motion. Following the bench trial, Tawfik was found guilty of aggravated assault on Corporal Moore. He was sentenced to serve four years' incarceration in the Arkansas Division of Correction to be served consecutively to any sentence he is currently serving. Tawfik now appeals.

On appeal, Tawfik argues that the circuit court erred by denying his motion to dismiss. He argues that the State presented no evidence that he acted with extreme indifference to the personal hygiene of the corrections officer. He further contends that there was insufficient evidence presented that there was a potential danger of infection.

We treat a motion to dismiss at a bench trial like a motion for directed verdict at a jury trial; it is considered a challenge to the sufficiency of the evidence.[2] We affirm a circuit court's denial of the dismissal motion if there is substantial evidence, either direct or circumstantial, to support the verdict.[3] Substantial evidence is evidence forceful enough to compel a conclusion one way or another beyond speculation and conjecture.[4] On appeal, we view the evidence in the light most favorable to the verdict, considering only evidence supporting the verdict.[5] Moreover, we do not weigh the evidence presented at trial because that is a matter for the fact-finder, nor do we assess the credibility of the witnesses.[6]

---

[2]*Hamrick v. State*, 2019 Ark. App. 298, 577 S.W.3d 734.

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

A person commits aggravated assault upon an employee of a correctional facility if, under circumstances manifesting extreme indifference to the personal hygiene of the employee of the correctional facility, the person purposely engages in conduct that creates a potential danger of infection to an employee of any state or local correctional facility while the employee of the state or local correctional facility is engaged in the course of his or her employment by causing the employee of the state or local correctional facility to come into contact with saliva, blood, urine, feces, seminal fluid, or other bodily fluid by purposely throwing, tossing, expelling, or otherwise transferring the fluid or material.[7]

Tawfik first argues that there was no evidence that his culpable mental state was of extreme indifference to the personal hygiene of the corrections officer. He contends that "extreme indifference to the personal hygiene" of the officer is undefined in the statute and that "extreme indifference" would be a greater culpable mental state than mere "indifference." Tawfik posits that while purposely spitting on the correctional officer might be conduct that would rise to the level of indifference, there is no evidence that it amounts to the required extreme indifference. In *Foster v. State*,[8] the testimony established that the officer attempted to hand Foster some toilet paper to spit the contents of his mouth into; however, Foster instead leaned in and spit directly on the toilet paper and the officer's arm, resulting in brown phlegm coming into contact with the officer's left arm, near his wrist. In that case, this court stated:

> Because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his acts.

[7]Ark. Code Ann. § 5-13-211(a)(1).

[8]104 Ark. App. 108, 289 S.W.3d 476 (2008).

5

While Mr. Foster claims it was an accident, there was ample evidence that he purposely spat on Deputy Hicks, resulting in his saliva coming in contact with the deputy under circumstances manifesting an extreme indifference to the deputy's personal hygiene.[9]

Here, on appeal, Tawfik has abandoned any argument that he did not purposely spit on Corporal Moore. As reasoned in *Foster*, we hold that Tawfik's actions of purposely spitting on Corporal Moore, after making threats to do so, manifested an extreme indifference to the officer's personal safety.

Tawfik also argues that there was no evidence offered by the State of a "potential danger of infection" within the meaning of Ark. Code Ann. § 5-13-211. He contends that the statutory language requires proof of potential danger of infection as an element of the crime; yet none was presented. He argues that evidence from a doctor, infectious-disease specialist, or other witness is needed to establish what types of pathogens might be contained in saliva and how that created a risk of potential danger of infection to the officer. Again, in *Foster*, this court stated, "Mr. Foster's act of purposely expelling his bodily fluid onto the deputy's person satisfied the "potential danger" requirement of the offense." Additionally, in *Green v. State*,[10] we held that Green's act of purposely spitting on a jail employee created a potential danger of infection, regardless of where the saliva made contact. Similarly, Tawfik's act of purposely spitting on Corporal Moore satisfied the potential-danger aspect of the crime.

Tawfik urges this court to overrule *Foster* and its progeny, arguing that allowing the finder of fact to draw upon common sense and experience in matters involving the danger of infection places no burden on the State whatsoever. We decline Tawfik's request to overrule our prior cases.

---

[9]*Id*. at 112, 289 S.W.3d at 479.

[10]2012 Ark. App. 315, 416 S.W.3d 765.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.